1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WELLS FARGO BANK, N.A., as TRUSTEE FOR THE CLARA POPPIC TRUST,<br><br>        Plaintiff,<br><br>   vs.<br><br>KENNETH G. RENZ, et al.,<br><br>        Defendants.<br><br>_____<br><br>AND RELATED ACTIONS.<br>_____ | Case No:  C 08-02561-SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT HOYT CORPORATION'S MOTION TO DISMISS**<br><br>Dkt. 252 |

     This action arises primarily under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").  Plaintiff Wells Fargo Bank N.A. ("Plaintiff") brings claims under CERCLA and related statutes, as well as common law tort claims, against the following Defendants: Kenneth G. Renz; Estate of Jackson R. Dennison; Estate of Wiley Umstead; Kazuko Umstead; Won Jae Yi; Nan Y. Park; Guan Huang; Ying Zhang; Sui Song; and Hoyt Corporation.  Defendant Kazuko Umstead ("Umstead") has filed a cross-complaint against various other defendants, including Hoyt Corporation.

     The parties are presently before the Court on Defendant Hoyt Corporation's ("Hoyt") "Motion to Dismiss Pursuant to FRCP 12(b)(6)," by which Hoyt seeks dismissal of all claims asserted against it by Plaintiff, as well as all cross-claims asserted against it by Umstead.  Dkt. 252.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS IN PART and DENIES IN PART the motion for the reasons set forth below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b).

# I.     FACTUAL BACKGROUND

## A.     PLAINTIFF'S COMPLAINT

Plaintiff commenced this action on May 21, 2008.  Plaintiff, as trustee, represents the owner of real property in Berkeley, California ("the Property").  In its Third Amended Complaint ("TAC"), in which Plaintiff added Hoyt as a defendant, Plaintiff asserts various causes of action related to alleged tetrachloroethylene ("PCE") contamination at the Property.  Dkt. 204, TAC ¶ 1.  The contamination is alleged to have originated from various operators of the dry cleaning business that operated on the Property from 1971 to 2008.  Id. ¶¶ 15-23.

With respect to allegations against Hoyt, Plaintiff asserts:

> Hoyt Corporation designed, manufactured, distributed, sold, and/or installed dry cleaning equipment used by Kenneth G. Renz, Jackson R. Dennison, and others, in connection with the operation of the dry cleaning business at the Property.  This equipment was specifically designed to store, use, process, arrange for disposal, and dispose of tetrachloroethylene ("PCE") and other dry-cleaning chemicals.  Hoyt Corporation represented, asserted, claimed, and warranted that its product was safe and could be operated without causing injury or damage.  Hoyt Corporation knew or should have known that its product, when operated as intended, caused contamination to the environment.

Id. ¶ 16.

Plaintiff brings the following claims against all defendants, including Hoyt: (1) Cost Recovery Pursuant to CERCLA § 107(a) (First Claim); (2) Hazardous Substance Statutory Indemnity (Second Claim); (3) Equitable Indemnity (Third Claim); (4) Declaratory Relief (Fourth Claim); (5) Porter-Cologne Statutory Contribution (Fifth Claim); (6) Continuing Private Nuisance (Sixth Claim); (7) Continuing Public Nuisance (Seventh Claim); (8) Public Nuisance Per Se (Eighth Claim); (9) Negligence (Ninth Claim); (10) Negligence Per Se (Tenth Claim); and (11) Continuing Trespass (Fourteenth Claim).[1]

## B.     UMSTEAD'S CROSS-COMPLAINT

Umstead filed her First Amended Cross-Complaint ("Cross-Complaint") on November 25, 2009.  Dkt. 206.  Umstead's claims against Hoyt are premised largely on the factual

---

[1] Claims Eleven, Twelve, Thirteen, Fifteen, and Sixteen of the TAC are not asserted against Hoyt.

allegations made in Plaintiff's TAC.  Furthermore, in identifying the cross-defendants, Umstead describes Hoyt as follows: "Hoyt Corporation is a Massachusetts corporation that manufactured, marketed, sold, and installed dry cleaning machines, related equipment and solvents, and provided instructions on the disposal of related wastes in the State of California." Id. ¶ 10.

Umstead's cross-claims against Hoyt are as follows:  (1) Indemnity/Cost Recovery Pursuant to CERCLA Section 107 (First Cross-Claim); (2) Contribution Pursuant to CERCLA Section 113 (Second Cross-Claim); (3) Contribution Pursuant to the Hazardous Substances Account Act (Third Cross-Claim); (4) Equitable Contribution and Indemnity (Fourth Cross-Claim); (5) Negligence (Fifth Cross-Claim); and (6) Declaratory Relief (Sixth Cross-Claim).

## II.  PROCEDURAL BACKGROUND

Now, Hoyt moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims against it in Plaintiff's TAC and Umstead's Cross-Complaint, on the ground that they fail to state any claim for which relief can be granted against Hoyt.

## III.  LEGAL STANDARD

A Rule 12(b)(6) dismissal for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal claim. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  In considering a Rule 12(b)(6) motion, the court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).  The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  A complaint that raises only "the mere possibility of misconduct" does not establish that the plaintiff is entitled to relief.  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  "If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court

determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.   ANALYSIS

### A.   THE CERCLA CLAIMS: PLAINTIFF'S FIRST CLAIM AND UMSTEAD'S FIRST CROSS-CLAIM - COST RECOVERY; UMSTEAD'S SECOND CROSS-CLAIM – CONTRIBUTION

Hoyt argues that Plaintiff and Umstead's respective claims under CERCLA should be dismissed on the following grounds: (1) they fail to allege facts showing that Hoyt intended to dispose of PCE through the sale of its products; (2) they fail to allege facts showing that Hoyt owned, possessed, or had any authority or obligation to control the PCE; and (3) they are barred by the "useful product" doctrine.

#### 1.     Intentional Disposal

In its First Claim, Plaintiff seeks recovery from Hoyt, under CERCLA, for its outlays of response costs it incurred in response to the release of PCE at the Property.  TAC ¶ 27. Moreover, Plaintiff alleges that Hoyt is a "past and current arranger[] of the past and continued disposal and release of hazardous substances into the soil, groundwater, and environment." Id. ¶ 28 (emphasis added).  With respect to Umstead, in her First and Second Cross-Claims, she seeks from Hoyt recovery of response costs and contribution for response costs, respectively. In these claims, Umstead merely incorporates the factual allegations contained in Plaintiff's TAC.

Under CERCLA, a plaintiff may attempt to recover cleanup costs from four categories of persons, defined at 42 U.S.C. § 9607(a).  Only the third category, persons defined as "arrangers," is at issue here:

> any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances ….

42 U.S.C. § 9607(a)(3).  CERCLA itself does not define the term "disposal," but instead incorporates the definition of that term as set forth in the Solid Waste Disposal Act ("SWDA"). See 42 U.S.C. § 9601(29); Cal. Dept. of Toxic Substances Control v. Alco Pacific, Inc., 508 F.3d 930, 934 (9th Cir. 2007).  The SWDA defines "disposal" as:

> the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

42 U.S.C. § 6903(3).  Furthermore, while CERCLA does not specifically define what it means to "arrang[e] for" disposal of a hazardous substance under Section 9607(a)(3), the Supreme Court has held that to qualify as an arranger, an entity must "take[] intentional steps to dispose of a hazardous substance." Burlington Northern and Santa Fe Ry. Co. v. U.S., --- U.S. ---, 129 S.Ct. 1870, 1879 (2009).

For instance, in Burlington Northern, defendant Shell Oil Company ("Shell") sold pesticides (the hazardous substance at issue) to its customer allegedly with the knowledge that the pesticides would spill, leak, or otherwise enter the environment from the customer's transfer and storage processes.  Id. at 1784-75.  On Shell's appeal from a bench trial finding it liable as an "arranger of disposal" under Section 9607(a)(3), the Supreme Court overturned that finding of liability:

> While it is true that in some instances an entity's knowledge that its product will be leaked, spilled, dumped, or otherwise discarded may provide evidence of the entity's intent to dispose of its hazardous wastes, knowledge alone is insufficient to prove that an entity "planned for" the disposal, particularly when the disposal occurs as a peripheral result of the legitimate sale of an unused, useful product. In order to qualify as an arranger, Shell must have entered into the sale of [the pesticide] with the intention that at least a portion of the product be disposed of during the transfer process by one or more of the methods described in § 6903(3).  Here, the facts found by the District Court do not support such a conclusion.

Id. at 1880 (emphasis added).

In its motion, Hoyt argues that Plaintiff and Umstead have not alleged facts sufficient to show that Hoyt entered into the sale of its products with the intention of disposing of PCE.  The Court agrees.  Plaintiff and Umstead have merely alleged, in a conclusory fashion, that Hoyt's

"equipment was specifically designed to store, use, process, arrange for disposal, and dispose of" PCE, and that Hoyt "knew or should have known that its product, when operated as intended, caused contamination to the environment."  TAC ¶ 16.  Umstead also summarily alleges that Hoyt "provided instructions on the disposal of related wastes."  Cross-Compl. ¶ 10.  Other than those vague and conclusory averments, Plaintiff and Umstead fail to allege any facts that could establish that Hoyt intentionally planned for any disposal of PCE through the sale of its machines.  Moreover, the pleadings are devoid of facts indicating how the Hoyt machines are alleged to have "disposed" of PCE, as that term is defined in Section 6903(3).  Indeed, Hoyt is further removed from the contamination as it is not alleged to have sold or provided any PCE to the dry cleaning operators.  As indicated, to withstand a Rule 12(b)(6) motion, a claim must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.

Hinds Investments, L.P. v. Team Enterprises, Inc., 2010 WL 1663986 (E.D. Cal. April 22, 2010), cited by Hoyt, supports the conclusion that the instant CERCLA claims are insufficiently plead.  There, the plaintiff – an owner of property upon which a dry cleaning business had operated –asserted a CERCLA "arranger liability" claim against Hoyt based on its sale and installation of dry cleaning equipment at the property.  In its complaint, the plaintiff alleged that Hoyt's product manual contained waste disposal guidance, and, on that basis, Hoyt was liable for arranging the disposal of PCE waste.  Relying on Burlington Northern, the Hinds Investment court dismissed the plaintiff's CERCLA claim, on Hoyt's Rule 12(b)(6) motion, finding the complaint's "'guidance' allegations [to be] insufficient to establish Hoyt's intentional disposal of hazardous substances."  Id. at *6; see also Cal. Dept. of Toxic Substances Control v. Payless Cleaners, College Cleaners, 368 F.Supp.2d 1069, 1077 (E.D. Cal. 2005) (allegations regarding defendant's control over the design of its dry cleaning machines and it provision of instructions on their use was not sufficient, without more, to find arranger liability).  Similarly, here, the TAC and Cross-Complaint do not allege any facts that could establish that Hoyt intentionally planned for any disposal of a hazardous substance.

In its opposition, Plaintiff fails to provide any meaningful response to Hoyt's assertion that its CERCLA claim, as plead, is infirm under Burlington Northern. Instead, Plaintiff "joins" in Umstead's opposition on this issue, and request leave to amend should the Court dismiss its claim. Pl.'s Opp. at 9 n. 2. In her opposition, Umstead argues that Burlington Northern and Hinds Investment do not apply here because "Hoyt is alleged to have improperly arranged for the treatment of the PCE waste … [n]either Burlington Northern nor Hinds Investment precludes a CERCLA claim against Hoyt based on treatment since the *prima facie* case is different for treatment than it is for disposal arrangement." Umstead Opp. at 13 (emphasis added). That argument is wholly without merit, as it is unsupported by the TAC or Cross-Complaint. Specifically, the allegations, as plead, are limited to assertions that Hoyt is an arranger of the disposal of hazardous waste, and none of the allegations characterizes Hoyt as an arranger for "treatment" of such waste. See TAC ¶ 16 ("This equipment was specifically designed to store, use, process, arrange for disposal, and dispose of tetrachlorethylene"); id. ¶ 28 (Hoyt is a "past and current arranger[s] of the past and continued disposal and release of hazardous substances into the soil, groundwater, and environment"); Cross-Compl. ¶ 10 ("Hoyt … manufactured, marketed, sold, and installed dry cleaning machines, related equipment and solvents, and provided instructions on the disposal of related wastes").

Therefore, based on the above stated reasons, Hoyt's motion to dismiss Plaintiff's First Claim and Umstead's First and Second Cross-Claims ("CERCLA Claims") is GRANTED. Plaintiff and Umstead are granted leave to amend the deficiencies discussed herein.[2]

---

[2] Hoyt argues that Plaintiff and Umstead should not be given leave to amend any of their claims because they "both had ample time to develop their claims against Hoyt and neither has made any showing that they would be able to allege facts that could support any of their claims." Hoyt Reply at 8. In view of the Ninth Circuit's liberal standard for permitting leave to amend when granting a motion to dismiss, Hoyt's argument is unpersuasive. Moreover, leave to amend would not be futile, as Plaintiff and Umstead could allege other facts to cure the deficiencies described herein. Finally, the Court notes that while the TAC is Plaintiff's fourth pleading, and the Cross-Complaint is Umstead's second pleading, they are the first to include Hoyt.

### 2.   Ownership, Possession, or Control

Hoyt argues that Plaintiff and Umstead fail to allege facts showing that Hoyt owned or possessed the PCE, or had any authority or obligation to control the disposal of the PCE. Therefore, according to Hoyt, they fail to state a claim for arranger liability under CERCLA.

To support that argument, Hoyt cites U.S. v. Shell Oil Co., 294 F.3d 1045 (9th Cir. 2002), in which the Ninth Circuit examined various decisions addressing "direct" arranger liability and "broad" arranger liability under Section 9607(a)(3).  In Shell, the Ninth Circuit explained that direct arranger liability arises where the "sole purpose of the transaction is to arrange for the treatment or disposal of the hazardous wastes." Id. at 1054.  Put another way, "a direct arranger must have direct involvement in arrangements for the disposal of waste." Id. at 1055 (citing Cadillac Fairview/Cal., Inc. v. United States, 41 F.3d 562 (9th Cir. 1994)).  The Ninth Circuit further explained that, where direct arranger liability is not present, a party can still be found to be an "arranger" under Section 9607(a)(3) under a "broad" theory, if the party has ownership or possession of the hazardous waste, or has the authority or obligation to control the disposal of the hazardous waste.  Id. at 1055-56.  While the Ninth Circuit held that there "is no is no bright-line test, either in the statute or in the case law, for a broad theory of arranger liability under § 9607(a)(3)," it provided the following summary of the relevant decisional authority on this issue:

> To summarize our view … and to assess the interrelationship of the factors of ownership, possession, and control over waste disposal, we can do no better than to quote from Judge Levi's careful opinion in *United States v. Iron Mountain Mines, Inc.*, 881 F.Supp. 1432 (E.D.Cal. 1995).  He writes:
>
> > It is true that some cases impose arranger liability on parties who did not literally own or physically possess hazardous waste at the time it was disposed of or released.  But in each of these cases the party either was the source of the pollution or managed its disposal by the arranger ….
> >
> > No court has imposed arranger liability on a party who never owned or possessed, and never had any authority to control or duty to dispose of, the hazardous materials at issue.  *See, e.g., General Elec. Co. v. AAMCO Transmissions, Inc.*, 962 F.2d 281, 286 (2d Cir. 1992) ("it is the obligation to exercise control over hazardous waste disposal, and not the mere ability or opportunity

to control the disposal of hazardous substances that makes an
entity an arranger under CERCLA's liability provision") ….

Id. at 1058.

Applying those principles, the Ninth Circuit considered whether the district court erred in finding on summary judgment that the defendant, the United States government, was an arranger under the "broad" arranger theory of liability.  There, the government had assisted the plaintiff oil refineries in exchanging and blending various chemicals to create aviation fuel (called "avgas"), which produced a hazardous waste byproduct.  Id. at 1050.  The government was aware that avgas production generated acid wastes.  Id. at 1051.  The government took some actions to alleviate the problem of waste disposal by, for example, facilitating the lease of a large storage tank.  Id.  However, the government never specifically ordered or approved the dumping of spent acid and acid sludge by the oil refineries.  Id.  Under those facts, the Ninth Circuit concluded that the government was not an arranger under Section 9307(a)(3) with respect to the dumped waste.  Id. at 1059.

Here, Hoyt contends that in order to be an arranger of the disposal of hazardous waste under Section 9607(a)(3), a party must, in every instance, have owned or possessed the waste, or had the obligation or authority to control disposal of the waste.  The Court rejects Hoyt's contention, as it is based on a misapprehension of Shell.  The Shell court made clear that questions of ownership, possession, and control are relevant where a claim of liability is based on a "broad" arranger theory, i.e., where it is not found that the accused party had direct involvement in arrangements for the disposal of waste.  Shell, 294 F.3d at 1054-56.  Where such direct involvement is found, a plaintiff may proceed under a "direct" arranger theory of liability.  Id.  Under that theory, "liability is not limited to those who own the hazardous substances, who actually dispose of or treat such substances, or who control the disposal or treatment process."  See Cadillac Fairview/Cal., 41 F.3d at 565.

In this case, Plaintiff and Umstead fail to state a claim under either the direct or broad theory of arranger liability.  In particular, they do not allege facts showing that the sole purpose of Hoyt's sale of its machines was to arrange for the disposal of the hazardous wastes, or that

1  Hoyt was otherwise directly involved in arrangements for the disposal of the waste (under a

2  direct theory). Moreover, they do not allege that Hoyt owned, possessed, or had any authority

3  or obligation to control the hazardous waste (under a broad theory). Rather, they simply aver

4  that Hoyt "designed, manufactured, distributed, sold, and/or installed dry cleaning equipment"

5  that was "specifically designed to store, use, process, arrange for disposal, and dispose of"

6  PCE, and that Hoyt "provided instructions on the disposal of related wastes." TAC ¶ 16;

7  Cross-Compl. ¶ 10. Of note, Plaintiff and Umstead neglect to respond to Hoyt's arguments in

8  this regard, or to the case law authority cited by Hoyt on this issue. Accordingly, Hoyt's

9  motion to dismiss the CERCLA Claims is further GRANTED on this basis. However, Plaintiff

10  and Umstead are granted leave to amend their claims to address the deficiencies discussed

11  herein.

12  **3.    Useful Product Doctrine**

13  Hoyt further contends that the CERCLA claims should be dismissed under the "useful

14  product" doctrine. Specifically, Hoyt asserts that it cannot be found liable under this doctrine

15  because, under the facts alleged, it did nothing more than provide a useful machine to be used

16  by a dry cleaning operator.

17  As explained by the Ninth Circuit, "[a] person may be held liable as an 'arranger' under

18  § 9607(a)(3) only if the material in question constitutes 'waste' rather than a 'useful product.'

19  …. [a]pplication of this distinction has been referred to as the 'useful product doctrine.'" <u>Alco</u>

20  <u>Pacific.</u>, 508 F.3d at 934 (internal citations omitted). "[S]ale of a 'useful product[]' does not

21  establish a complete defense from arranger liability, however …. [i]f a transaction involved in

22  the sale of a useful product includes an arrangement for the ultimate disposal of a hazardous

23  substance, arranger liability may be found." <u>Payless Cleaners</u>, 368 F.Supp.2d at 1077 (citing

24  <u>Cadillac Fairview/Cal.</u>, 41 F.3d at 566). "For example, the sale of asbestos for building

25  construction is not an arrangement for disposal." <u>Id</u>. (citing <u>Stevens Creek Assocs. v. Barclays</u>

26  <u>Bank</u>, 915 F.2d 1355 (9th Cir. 1990)). "Neither can a manufacturer of PCE be held liable as a

27  CERCLA arranger where it has done nothing more than sell a useful chemical." <u>Id</u>. (citing

28  <u>City of Merced v. Fields</u>, 997 F.Supp. 1326 (E.D. Cal. 1998)).

Additionally, the Ninth Circuit has stated that, in the useful product doctrine context, the following factors should be considered in determining whether the transaction involved an arrangement for disposal of a hazardous waste:  "(1) the 'commercial reality' and value of the product in question; (2) a factual inquiry into the actions of the seller in order to determine the intent underlying the transaction; and (3) whether the material in question was a principal product or by-product of the seller[.]"  <u>Alco Pacific</u>, 508 F.3d at 938.

Here, Plaintiff and Umstead fail to allege any facts showing that the sale of the dry cleaning equipment also included an arrangement for the ultimate disposal of a hazardous substance.  Rather, they aver that Hoyt sold dry cleaning equipment that it knew or should have known caused contamination.  Neither Plaintiff nor Umstead addresses the useful product doctrine and Hoyt's related arguments in their oppositions.  As such, Hoyt's motion to dismiss the CERCLA Claims is further GRANTED on this basis.  Plaintiff and Umstead are granted leave to amend their claims to address the above stated deficiencies.

B.  **PLAINTIFF'S SECOND CLAIM - HAZARDOUS SUBSTANCE STATUTORY INDEMNITY; UMSTEAD'S THIRD CROSS-CLAIM - CONTRIBUTION PURSUANT TO THE HAZARDOUS SUBSTANCES ACCOUNT ACT**

Plaintiff's Second Claim and Umstead's Third Cross-Claim are both brought under California's Hazardous Substance Account Act ("HSAA"), the California version of CERCLA, and both seek from Hoyt contribution of response costs.  Hoyt argues that these HSAA claims should be dismissed on the same grounds as the CERCLA claims.  Plaintiff and Umstead have not argued otherwise.  Indeed, HSAA specifically states that: "'[r]esponsible party' or 'liable person,' … means those persons described in Section 107(a) of the federal act (42 U.S.C. Sec. 9607(a))."  Cal. Health & Safety Code § 25323.5.  Therefore, these claims are DISMISSED, with leave to amend, for the same reasons stated above with respect to the CERCLA Claims.

**C.    PLAINTIFF'S NINTH CLAIM – NEGLIGENCE; PLAINTIFF'S TENTH CLAIM – NEGLIGENCE PER SE; UMSTEAD'S FIFTH CROSS-CLAIM - NEGLIGENCE**

Hoyt challenges Plaintiff and Umstead's negligence claims on two grounds:  first, they are barred by the economic loss doctrine; and second, they are barred by the applicable statute of limitations.  Each of those challenges is addressed in turn.

**1.    Plaintiff's Negligence Claims**

Hoyt argues that Plaintiff's negligence claims fail because the damages sought under these claims are purely economic losses, i.e., the recovery of costs to remediate PCE contamination.  Under California law, "economic loss alone, without physical injury, does not amount to the type of damage that will cause a negligence or strict liability cause of action to accrue …. [i]n a strict liability or negligence case, the compensable injury must be physical harm to persons or property, not mere economic loss."  County of Santa Clara v. Atlantic Richfield Co., 137 Cal.App.4th 292, 318 (2006).[3]  However, as corrected noted by Plaintiff, it specifically alleges in its negligence claim that, as a proximate result of Hoyt's negligence, it "has suffered damages including … damage and harm to Plaintiff's property."  TAC ¶ 69 (emphasis added); see also Payless Cleaners, 368 F.Supp.2d at 1084 (rejecting argument that economic loss rule barred plaintiff's negligence claim against dry cleaning equipment manufacturer where plaintiff had alleged damage to its property).  Thus, Hoyt's economic loss argument is without merit, and dismissal on that basis is denied.[4]

With respect to Hoyt's argument that Plaintiff's negligence claims are time-barred, the statute of limitations for tort claims arising from property damage is three years.  Cal. Code

---

[3] "While there is generally no duty to prevent economic loss to third parties in negligence actions at common law … [a] duty of care may arise through statute, contract, the general character of the activity, or the relationship between the parties[.]"  Greystone Homes, Inc. v. Midtec, Inc., 168 Cal.App.4th 1194, 1215 (2008) (internal citations omitted).  Here, neither Plaintiff nor Umstead asserts that such a duty of care arose in this case.

[4] In its reply, Hoyt asserts that Plaintiff is "shifting its claims at the last minute" by asserting "for the first time in this litigation" property damage.  This argument is not compelling.  Given the clear language of Plaintiff's negligence claim, Hoyt has been on notice of Plaintiff's assertion of property damage since it filed its TAC on November 20, 2009.

Civ. Pro. § 338.  The parties do not dispute that a three-year limitations period applies to Plaintiff's negligence claims.  The statute "begins to run when the Plaintiff suspects or should suspect that [its] injury was caused by wrongdoing …."  Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1110 (1988).  A claim may be dismissed because it is barred by the relevant statute of limitations when the running of the statute "is apparent from the face of the complaint."  Ledesma v. Jack Stewart Produce, Inc., 816 F.2d 482, 484 n. 1 (9th Cir. 1987).

       In this action, on September 8, 2009, Plaintiff filed a motion for leave to file a TAC to add Hoyt as a defendant, and included its proposed TAC as an exhibit to its motion.  Dkt 180.  That motion was granted on November 16, 2009, and Plaintiff filed its TAC on November 20, 2009.  In the TAC, Plaintiff alleges that it "first discovered after September 2006 the existence of contamination in the soil and groundwater in and around the Property …. Plaintiff did not know, nor had any reason to know, before September 2006, the existence of the contamination and the injury to Plaintiff."  TAC ¶ 23.  Hoyt argues that Plaintiff's negligence claims against it are time barred because Plaintiff filed its TAC (on November 20, 2009) more than three years after it discovered the contamination (in September 2006).  Plaintiff, however, filed its motion for leave to file the TAC on September 8, 2009, which, based on the face of the TAC, is within the limitations period.  See Moore v. State of Ind., 999 F.2d 1125, 1131 (7th Cir. 1993) ("the submission of a motion for leave to amend, properly accompanied by the proposed amended complaint that provides notice of the substance of those amendments, tolls the statute of limitations, even though technically the amended complaint will not be filed until the court rules on the motion") (citing Mayes v. AT & T Information Systems, Inc., 867 F.2d 1172 (8th Cir. 1989) (per curiam)).  Thus, it is not apparent from the face of the TAC that Plaintiff's negligence claims are time barred, and a Rule 12(b)(6) dismissal on that basis is not warranted.

       For these reasons, Hoyt's motion to dismiss Plaintiff's Ninth Claim (Negligence) and Tenth Claim (Negligence Per Se) is DENIED.

### 2.    Umstead's Negligence Cross-Claim

       Hoyt also challenges Umstead's negligence cross-claim under the economic loss doctrine.  In this claim, Umstead alleges that Hoyt was negligent in "owning, leasing,

operating, using, testing, inspecting, maintaining, repairing, managing, or monitoring the PROPERTY, or the dry cleaning business operated thereon[].'' Cross-Compl. ¶¶ 36-38.  As far as damages, Umstead alleges that "as a direct and proximate cause of the negligence of [Hoyt] …, Umstead has incurred and continues to incur costs and expenses, including but not limited to, litigation costs, attorney's fees, and consultants' fees to defend against the [TAC] …." Id. ¶ 39.  Umstead further asserts that, in the event it is found liable to Plaintiff, "said damages are a direct and proximate result of the negligence of [Hoyt]." Id.  Thus, Umstead's damage claim is limited to costs and fees associated with her defense against Plaintiff's claims and to any liability she may incur under those claims.  Because Umstead fails to allege any physical harm to persons or property, and because she does not assert that Hoyt was under a duty to prevent economic loss to her (see Greystone Homes, 168 Cal.App.4th at 1215), her negligence claim fails under the economic loss doctrine.

In her opposition, Umstead argues that because she and Plaintiff allege that Hoyt's negligence caused contamination to the Property, she sufficiently alleges non-economic loss.  Umstead's argument, however, is based on a mischaracterization of her negligence claim.  While Plaintiff is seeking to recover damages to the Property with its negligence claim, with her negligence claim, Umstead is only seeking costs and fees resulting from her defense against Plaintiff's claims and damages arising from any finding of liability under those claims.  Umstead provides no authority to support the proposition that these types of damages are non-economic losses.[5]

Turning to Hoyt's statute of limitations argument, it posits that "since Umstead's Cross-claim is derivative of the TAC, [her] negligence claim against Hoyt also is barred the statute of limitations."  Hoyt's Mot. at 19.  Again, the parties are mischaracterizing Umstead's negligence claim.  Her claim is based on damages she has and may incur as a result of Plaintiff's suit.  Umstead would not have suspected, nor should she have suspected, that she

---

[5] On this point, Umstead's negligence claim appears to be duplicative, at least in part, of her cross-claims against Hoyt for equitable indemnity and contribution, by which she seeks indemnification and contribution from Hoyt for any damages to Plaintiff for which she is found liable.  See Cross-Compl. ¶¶ 32-34.

1   was injured by the suit until Plaintiff filed its original complaint on May 21, 2008, naming her

2   as a defendant.  Umstead filed her cross-complaint against Hoyt on November 25, 2009.  Hoyt

3   fails to argue that, under this scenario, Umstead's negligence claim is time barred.  Therefore,

4   dismissal is not also warranted on this basis.

5       In sum, Umstead's Fifth Cross-Claim (Negligence) is DISMISSED with leave to amend

6   to address the deficiencies identified herein.

7       **D.    PLAINTIFF'S SIXTH CLAIM – CONTINUING PRIVATE NUISANCE; PLAINTIFF'S**

8       **SEVENTH CLAIM – CONTINUING PUBLIC NUISANCE; PLAINTIFF'S EIGHTH**

9       **CLAIM – PUBLIC NUISANCE PER SE**

10      In its continuing private nuisance claim, Plaintiff alleges that Hoyt "caused or permitted

11  the contamination alleged in this action by [its] negligence, intentional or otherwise, actionable

12  acts and/or omissions, as described herein," and that the contamination constitutes a nuisance.

13  TAC ¶¶ 50-52.  Plaintiff further alleges that, as a direct and proximate result of the nuisance, it

14  has been damaged by incurring costs to respond to the contamination of the Property.  Id. ¶ 53.

15  Plaintiff bases its public nuisance claims on allegations similar to those stated in its private

16  nuisance claim.

17      "A private nuisance is a nontrespassory invasion of another's interest in the private use

18  and enjoyment of land."  Birke v. Oakwood Worldwide, 169 Cal.App.4th 1540, 1550 (2009).[6]

19  "[P]ublic nuisances are offenses against, or interferences with, the exercise of rights common

20  to the public."  Atlantic Richfield, 137 Cal.App.4th at 305 (internal quotations omitted).  "[T]o

21  be considered a nuisance per se the object, substance, activity or circumstance at issue must be

22  expressly declared to be a nuisance by its very existence by some applicable law."  City of

23  Claremont v. Kruse, 177 Cal.App.4th 1153, 1163 (2009).  A private individual may bring a

24  public nuisance action when the individual suffers harm that is "specially injurious to himself,

25  but not otherwise."  Kempton v. City of Los Angeles, 165 Cal.App.4th 1344, 1349 (2008)

---

26      [6] Depending upon its nature, a nuisance is either permanent or continuing.  Shamsian v.
27  Atlantic Richfield Co., 107 Cal.App.4th 967, 979 (2003).  Where the nuisance involves an
    offensive condition that can be discontinued or abated at any time, it is characterized as a
28  continuing nuisance.  Id.

(internal quotations omitted).  "[I]t is established that trespass and nuisance claims may include wrongful entry or invasion by pollutants."  Martin Marietta Corp. v. Ins. Co. of North America, 40 Cal.App.4th 1113, 1132 (1995).

Hoyt argues that Plaintiff's nuisance claims fail because they do not allege facts sufficient to show that the contamination of the Property was caused by Hoyt's sale of its dry cleaning equipment.  Hoyt relies on City of Modesto Redevelopment Agency v. Superior Court, 119 Cal.App.4th 28 (2004), where the court addressed a California hazardous substances remediation and recovery statute (the Porter-Cologne Act).  The court explained that:

> in construing the statute in light of the common law principles bearing upon [nuisance] … we conclude that those who who took affirmative steps directed toward the improper discharge of solvent wastes-for instance, by manufacturing a system designed to dispose of wastes improperly or by instructing users of its products to dispose of wastes improperly-may be liable under that statute, but those who merely placed solvents in the stream of commerce without warning adequately of the dangers of improper disposal are not liable under that section of the Porter-Cologne Act.

Id. at 43 (brackets in original).  Hoyt argues that, under the nuisance analysis provided in City of Modesto, Plaintiff must allege with its nuisance claims some affirmative act undertaken by Hoyt that caused or contributed to the nuisance.

Plaintiff sufficiently pleads such facts here.  In particular, with its negligence claim, which Plaintiff incorporates into its nuisance claims (i.e., Hoyt "caused or permitted the contamination alleged in this action by [its] negligence … as described herein"), Plaintiff alleges that Hoyt was "aware of typical disposal practices resulting from the intended use" of its equipment, and knowingly "designed its equipment in a manner that would result in discharge of PCE during normal operations."  TAC ¶ 66B.  The TAC further alleges that Hoyt failed to design mechanisms that would eliminate the contamination that it knew arose from the dry cleaning process performed by its equipment, and negligently failed to redesign or modify its equipment to protect against contamination.  Id. ¶¶ 66C-D.  In addition, the TAC alleges that Hoyt failed "to warn users that the recommended methods of use and disposal … would in fact cause contamination."  Id. ¶ 66E.  Finally, the TAC alleges that Hoyt "negligently

represented … that its dry cleaning equipment could be used in conformity with its instructions and/or labels in a manner that would not result in injury and/or damage." Id. ¶ 65.  Such allegations are sufficient as they "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (2006); see also Adobe Lumber, Inc. v. Hellman, 415 F.Supp.2d 1070, 1083 (E.D. Cal. 2006) (in PCE contamination suit, rejecting defendant dry cleaning equipment manufacturer's assertion that causation was not properly plead under plaintiff's nuisance and trespass claims, in view of plaintiff's allegation that disposal instructions were provided with the equipment, even though plaintiff failed to allege that the operators relied upon the instructions) (vacated on other grounds by Kotrous v. Goss-Jewett Co. of Northern Cal., 523 F.3d 924 (9th Cir. 2008)).[7]

Accordingly, Hoyt's motion to dismiss Plaintiff's Sixth, Seventh, and Eighth Claims (Nuisance Claims) is DENIED.

### E.   PLAINTIFF'S FOURTEENTH CLAIM – CONTINUING TRESPASS

Under California law, "[a] trespass may be committed by the continued presence on the land of a ... thing which the actor or his predecessor in legal interest has placed on the land … with the consent of the person then in possession of the land, if the actor fails to remove it after the consent has been effectively terminated …."  Payless Cleaners, 368 F.Supp.2d at 1082 n. 9. Plaintiff here alleges that Hoyt trespassed on the Property "by contaminating the soil and groundwater and/or by contributing to said contamination," that the contamination occurred because of Hoyt's negligence or intentional conduct, and that, as a result, Plaintiff has been damaged.  TAC ¶¶ 91-93.

---

[7] To support its challenge to Plaintiff's nuisance and trespass claims, Hoyt also relies on Hinds Investments, wherein the court dismissed such claims against Hoyt on the ground that the claims failed to allege causation.  There, the court found a lack of causation largely because the complaint did not allege that the plaintiff had relied upon Hoyt's disposal instructions. Hinds Investments, 2010 WL 1663986 at *19-21.  In view of Adobe Lumber, in which the court came to the opposite conclusion based on similar facts, and given the allegations presented in this action, the Court finds the Hinds Investments analysis to be non-dispositive on this issue.

1    Hoyt's challenge to Plaintiff's trespass claim is similar to its challenge to Plaintiff's

2  nuisance claims, i.e., that Plaintiff fails to allege that the nuisance was caused by Hoyt's sale of

3  the equipment, or that Hoyt took any affirmative act to cause or contribute to the

4  contamination.  Again, in view of <u>Adobe Lumber</u>, in which the court came to the opposite

5  conclusion based on similar factual allegations relating to trespass, the Court finds Hoyt's

6  challenge to be without merit.  Thus, Hoyt's motion to dismiss Plaintiff's Fourteenth Claim

7  (Continuing Trespass) is DENIED.

8    **F.    PLAINTIFF'S THIRD, FOURTH, AND FIFTH CLAIMS; UMSTEAD'S FOURTH AND**

9    **SIXTH CROSS-CLAIMS**

10    As a final matter, Hoyt argues that, should the Court dismiss Plaintiff and Umstead's

11  CERCLA, HSAA, and tort law claims, it should also dismiss their claims for indemnity,

12  contribution, and declaratory relief (i.e., Plaintiff's Third, Fourth, and Fifth Claims, and

13  Umstead's Fourth and Sixth Cross-Claims).  In other words, Hoyt asserts that these claims are

14  derivative claims that must fail in the absence of any predicate liability.

15    Given that the Court has found Plaintiff's tort claims to be adequately plead, Hoyt's

16  challenge to Plaintiff's indemnity, contribution, and declaratory relief claims fails on that basis.

17  With respect to Umstead, her claims for indemnity, contribution, and declaratory relief against

18  Hoyt are predicated upon a finding that Umstead is liable to Plaintiff under Plaintiff's claims.

19  <u>See e.g.</u>, <u>General Motors Corp. v. Doupnik</u>, 1 F.3d 862, 866 (9th Cir. 1993) ("The equitable

20  indemnity rule enables a concurrent tortfeasor to obtain partial indemnity from other

21  concurrent tortfeasors on a comparative fault basis."); <u>Sullins v. Exxon/Mobil Corp</u>., 2010 WL

22  2464963, *8 (N.D. Cal. June 14, 2010) ("Contribution is a right created by statute that provides

23  for the distribution of a loss equally among all tortfeasors.") (citing <u>Coca-Cola Bottling Co. v.</u>

24  <u>Lucky Stores, Inc</u>., 11 Cal.App.4th 1372, 1378 (1992)).  Because Plaintiff adequately plead its

25  tort claims, which could result in a finding that Umstead is liable under those claims, Hoyt's

26  motion to dismiss Umstead's indemnity, contribution, and declaratory relief claims fails.

27    ///

28    ///

**V.     <u>CONCLUSION</u>**

For the foregoing reasons,

IT IS HEREBY ORDERED THAT:

1.     Hoyt's motion to dismiss Plaintiff's First and Second Claims is GRANTED. These claims are DISMISSED as against Hoyt with leave to amend.

2.     Hoyt's motion to dismiss Plaintiff's Third through Tenth Claims and Fourteenth Claim is DENIED.

3.     Hoyt's motion to dismiss Umstead's First, Second, Third, and Fifth Cross-Claims is GRANTED.  These cross-claims are DISMISSED as against Hoyt with leave to amend.

4.     Hoyt's motion to dismiss Umstead's Fourth and Sixth Cross-Claims is DENIED.

5.     Plaintiff and Umstead shall have twenty-one (21) days from the date this Order is filed to file amended pleadings.  If Plaintiff and/or Umstead timely amends its/her pleading, Hoyt shall respond consistent with the Federal Rules of Civil Procedure.

6.     This Order terminates Docket 252.

IT IS SO ORDERED.

Dated:  January 12, 2011                    _____
                                            SAUNDRA BROWN ARMSTRONG
                                            United States District Judge

1

2  UNITED STATES DISTRICT COURT
   FOR THE
3  NORTHERN DISTRICT OF CALIFORNIA

4  WELLS FARGO BANK N.A. et al,

5              Plaintiff,

6    v.

7  RENZ et al,

8              Defendant.
   _____/
9

10                                      Case Number: CV08-02561 SBA

11                              **CERTIFICATE OF SERVICE**

12
   I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
13 Court, Northern District of California.

14 That on January 12, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said
   copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing
15 said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
   located in the Clerk's office.
16

17

18
   Guan  Huang
19 2683 22nd Street
   San Francisco,  CA 94110
20
   Nan Y. Park
21 8306 Wilshire Boulevard
   Suite 560
22 Beverly Hills,  CA 90211

23 Won Jae Yi
   2565 Telegraph Avenue
24 Berkeley,  CA 94704

25 Dated: January 12, 2011

26                                      Richard W. Wieking, Clerk

27                                         By: LISA R CLARK, Deputy Clerk

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28