UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WELLS FARGO BANK, N.A., as TRUSTEE FOR THE CLARA POPPIC TRUST, | Case No:  C 08-02561 SBA |
| Plaintiff, | **ORDER** |
| vs. | Dkt. 284, 306, 308, 311, 312, 313, 314, 333 |
| KENNETH G. RENZ, et al., | |
| Defendants. | |

AND RELATED ACTIONS.

The Clara Poppic Trust ("the Trust") is owner of commercial property located at 2531 Telegraph Ave., Berkeley, California ("Property"), the site of a dry cleaning business known as Cal Cleaners.  In 2006, the Trust allegedly discovered that the Property was contaminated with perchloroethylene ("PCE"), a chemical used in dry cleaning operations. To defray the cost of remediating the contamination, Plaintiff Wells Fargo Bank N.A., in its capacity as Trustee for the Trust, filed the instant cost recovery and contribution action, principally under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq., against former lessees of the Property, including Kenneth Renz, the Estate of Jackson R. Dennison and Kazuko Umstead, among others, who allegedly operated Cal Cleaners from 1975 to 2008.  In turn, Defendants have filed counterclaims against Plaintiff, crossclaims against each other and third-party complaints against manufacturers of the dry cleaning equipment, including Hoyt

1  Manufacturing and Vic Manufacturing Company and its alleged successor, Bowe Permac,
2  Inc.

3      The parties are now before the Court on the following motions, which are styled as
4  follows:

5      1.   Defendant Estate of Jackson R. Dennison's Motion for Summary Judgment
6  or in the Alternative Summary Adjudication, Dkt. 313;

7      2.   Defendant Kenneth G. Renz's Motion for Summary Judgment or in the
8  Alternative Summary Adjudication, Dkt. 314;

9      3.   Defendant Kazuko Umstead's Motion for Summary Judgment of All
10 Plaintiff's Claims, or in the Alternative, Partial Summary Judgment of Plaintiff's Individual
11 Claims for Relief, Dkt. 308;

12     4.   Defendant Hoyt Corporation's Motion to Dismiss Pursuant to FRCP 12(b)(6),
13 Dkt. 284;

14     5.   Defendant Hoyt Corporation's Motion to Dismiss Renz's Cross-Claims
15 Pursuant to FRCP 12(b)(6), Dkt. 333;

16     6.   Defendant Hoyt Corporation's Motion for Partial Summary Judgment, Dkt.
17 306;

18     7.    Third Party Defendants Bowe Permac, Inc. and Vic Manufacturing
19 Company's Motion for Judgment on the Pleadings Pursuant to FRCP 12(c), Dkt. 311; and,

20     8.   Third Party Defendants Bowe Permac, Inc. and Vic Manufacturing
21 Company's Motion for Summary Judgment or, Alternatively, for Partial Summary
22 Judgment, Dkt. 312.

23     Having read and considered the papers filed in connection with this matter and being
24 fully informed, the Court enters the following memorandum and order.  The Court, in its
25 discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ.
26 P. 78(b); Civ. L.R. 7-1(b).

27

28

I.      **BACKGROUND**

A.      FACTUAL BACKGROUND

1.      **1974-1977**

On August 19, 1974, Henry Poppic, as Executor for the Estate of Clara Poppic, entered into a lease agreement ("Lease" or "1974 Lease") with Kenneth G. Renz ("Renz") and his uncle Jackson R. Dennison ("Dennison"), "for the purpose of conducting therein a coin-operated launderette and dry cleaning establishment."  Fourth Am. Compl. ("FAC") Ex. A at 1 (copy of 1974 Lease), Dkt. 283-1.  The term of the Lease ran from November 1, 1974 to October 31, 1984.  Id.  The Lease granted lessees Renz and Dennison access to the Property beginning on October 1, 1974, for the purpose of remodeling the premises.  Id. ¶ 30.  Renz and Dennison operated Cal Cleaners from about February 1975 until about May 1977.   Renz Mot. at 7, Dkt. 314.

In January 1975, prior to opening Cal Cleaners, Renz and Dennison purchased a new Hoyt Sniff-O-Miser ("Sniff-O-Miser") from Steam Equipment Sales Company ("Steam Equipment") in Oakland, California.  FAC ¶ 16, Dkt. 283.  The purpose of the Sniff-O-Miser was to treat and reclaim PCE from gaseous fumes vented by the dryer/reclaimer or otherwise present in the ambient air from other dry cleaning plant operations.  Id.  The pure PCE reclaimed by the Sniff-O-Miser could be reused in the dry cleaning machines.  Id.  However, some amount of PCE remained in the wastewater resulting from the reclamation process.  Id.  An individual named "Pete" (whose affiliation is not indicated) provided instructions on how to operate the Sniff-O-Miser, which included dumping the wastewater into the toilet.  Id.  Plaintiff also claims that a manual from 1979 instructs that wastewater "should be piped to an open sewer system…."  Id.

2.      **1977-1986**

In or about May 13, 1977, Renz and Dennison sold Cal Cleaners to Wiley Umstead ("Mr. Umstead").[1]  Adam Decl. Ex. D at 19:1-5, 67:3-11, Dkt. 308-3.  The sale was

---

[1] Although the Court generally refers to the individual parties by their last name, for clarity, the Court will refer to the Umsteads with title "Mr." or "Mrs."

memorialized in a Notice of Bulk Transfer and a Receipt and Agreement.  Adam Decl. Ex. D (Exs. 8 and 9 to Renz Depo.), Dkt. 308-3.  The Notice of Bulk Transfer (which is intended to give notice to creditors, see Cal. Comm. Code § 6102), indicates that Renz and Dennison were transferring the Cal Cleaners business to Mr. Umstead, who is the only signatory to the document.  Id.  Likewise, the Notice and Receipt specified that the "Name, Lease, Equipment, Fixtures, Business & Goodwill" of Cal Cleaners were being sold to Mr. Umstead.  Id. at 145:10-146:11.  Mr. Umstead signed the purchase agreement as the "PURCHASER."  Id.  Wiley Umstead's wife, Kazuko Umstead ("Mrs. Umstead"), did not sign the purchase agreement nor is she mentioned in the document.  In connection with the sale, Renz and Dennison assigned the 1974 Lease to Mr. *and* Mrs. Umstead, pursuant to an Assumption of Assignment ("1977 Assignment").  FAC Ex. B, Dkt. 283.  However, the assignment is undated and the "Consent to Assignment," which was to be signed by the Estate of Clara Poppic, was left blank.  Id.

On July 13, 1983, Mr. Umstead and Coldwell National Bank and Henry Poppic, in their capacities as co-trustees of the Trust, executed a new ten-year lease ("1983 Lease") for the Property.  FAC Ex. C, Dkt. 283-1.  The lease term ran from July 31, 1983, to July 31, 1993.  Id.  Mrs. Umstead did not sign the 1983 Lease, and only Mr. Umstead's name and signature appear on the document.  Id. at 9.

At some point during his ownership of Cal Cleaners, Mr. Umstead purchased a Kamero Model 405 dry cleaning machine manufactured by Vic Manufacturing Company ("Vic"), a Minnesota corporation.  See Weyand Decl. Ex. C, Dkt. 316.  Bowe Permac, Inc. ("Bowe") acquired Vic pursuant to a stock acquisition agreement, dated November 10, 1992.  Id. Ex. A.  Vic was dissolved under the laws of Minnesota on February 25, 2002.  Id. Ex. B.

Mrs. Umstead occasionally worked at Cal Cleaners, though her involvement was limited to sewing, sorting and hanging clothes, and keeping the premises tidy.  Adam Decl. Ex. D at 48:16-17, 164:24-165:15; Ex. E at 41:4-2-11, Dkt. 308-3; Culver Decl. Ex. C at

6:24-7:5, Dkt. 324.  Mrs. Umstead does not recall observing any chemical leaks coming from the equipment.  Culver Decl. Ex. C at 6:24-7:5, Dkt. 324.

### 3.    1986-2008

In August 1986, Mr. Umstead sold Cal Cleaners to Won Jae Yi ("Yi").  Adams Decl. Ex. F at 13:14-16, 89:14-90:8, Dkt. 308-3.  As part of the sale, Mr. Umstead assigned the 1983 Lease to Yi.  FAC Ex. D. Dkt. 283.  The assignment was countersigned by Wells Fargo Bank (the successor to Crocker National Bank) and Henry Poppic, as co-trustees of the Trust.  Id.  Yi allegedly operated the dry cleaners until November 1999.  Id. ¶ 18.

After Yi, Cal Cleaners was operated by the following persons:  Nan Y. Park ("Park")—November 1999 to April 2004; and Guan Huang ("Huang"), Ying Zhang ("Zhang") and Sui Song ("Song")—April 2004 to February 2008.  Id. ¶¶ 19-20.  The Trust has owned the Property during all relevant time periods.  Id. ¶ 21.  In September 2006, PCE was discovered in the ground at the Property when the Trust was attempting to sell the Property.  Id. ¶ 23.

### B.    PROCEDURAL HISTORY

On May 21, 2008, Plaintiff, in its capacity as Trustee, filed the instant action in this Court, principally under CERCLA.  As Defendants, the Complaint named:  Renz; Dennison; Mr. Umstead; Yi; Park; Huang; Zhang; and Song.  Compl. ¶ 11, Dkt. 1.  The Complaint alleged fourteen claims for:  (1) cost recovery under CERCLA § 107(a), 42 U.S.C. § 9607(a); (2) contribution under the Carpenter-Presley-Tanner Hazardous Substance Account Act ("HSAA"), Cal. Health & Saf.Code, § 25300, et seq; (3) equitable indemnity; (4) declaratory relief; (5) contribution under the California Porter-Cologne Water Quality Control Act ("Porter-Cologne Act"), Cal. Water Code § 13000, et seq.; (6) continuing private nuisance; (7) continuing public nuisance; (8) public nuisance per se; (9) negligence; (10) negligence per se; (11) breach of lease; (12) express contractual indemnity (13) waste; and (14) continuing trespass.

Plaintiff has amended the pleadings on four separate occasions.  Specifically, Plaintiff filed a First Amended Complaint on June 24, 2008, Dkt. 11; a Second Amended

1   Complaint on November 4, 2008, Dkt. 102; and Third Amended Complaint on November
2   20, 2009, Dkt. 204.  The Third Amended Complaint joined Mrs. Umstead as a party-
3   defendant, and substituted the Estate of Wiley Umstead and the Estate of Jackson Dennison
4   in place of Mr. Umstead and Dennison, respectively, who are deceased.  Dkt. 204.[2]   In
5   addition, Plaintiff added a fifteenth claim for injunctive relief under the Resource
6   Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), and a sixteenth
7   claim for contribution under CERCLA § 113(f), 42 U.S.C. § 9613(f).  In the latter claim,
8   Plaintiff seeks contribution from the other Defendants to the extent Plaintiff is found liable
9   on Huang's claim against Plaintiff under CERCLA § 107(a).  See Third Am. Compl. ¶ 111,
10  Dkt. 204.

11        In response to Plaintiff's claims, Defendants filed various counterclaims,
12  crossclaims and third party actions.  Among other pleadings, Mrs. Umstead filed a Second
13  Amended Third Party Complaint against Vic, Bowe, Perc-Serv, Inc., and Steam
14  Equipment, all of which allegedly provided equipment used at Cal Cleaners.  Dkt. 205.  In
15  addition, Mrs. Umstead filed a First Amended Cross-Claim against all Defendants.  Dkt.
16  206.

17        On May 5, 2010, Hoyt filed a Rule 12(b)(6) motion to dismiss the claims alleged in
18  the Third Amended Complaint, as well as in Mrs. Umstead's First Amended Cross-Claim.
19  Dkt. 252.  On January 12, 2011, the Court rendered its ruling on the motion which
20  dismissed Plaintiff's CERCLA claims with leave to amend, and denied the motion in all
21  other respects.  Dkt. 278.  The Court dismissed Mrs. Umstead's crossclaims under
22  CERCLA, HSAA and for negligence, but denied the motion with respect to her claims for
23  equitable contribution and indemnity, and for declaratory relief.  Id.

24

25

26        [2] There is no indication in the record that the Estate of Wiley Umstead has been
    served, and the 120-day time limit for doing so under Federal Rule of Civil Procedure 4(m)
27  has long since passed.  Plaintiff has not objected to Mrs. Umstead's request to dismiss the
    Estate, without prejudice.  See Dkt. 437.  Therefore, the Court dismisses the Estate of
28  Wiley Umstead as a party-defendant, without prejudice, under Rule 4(m).

In response to the Court's ruling, Plaintiff filed a Fourth Amended Complaint ("FAC"), and Mrs. Umstead filed a Second Amended Cross-Claim on February 2, 2011. Dkt. 282, 283.

On March 22, 2011, Renz filed a document styled as Amended Cross-Complaints in Response to the Fourth Amended Complaint, which alleges five crossclaims against all other Defendants.  Dkt. 309.

C.      PLEADINGS AND MOTIONS BEFORE THE COURT

Eight motions are now before the Court.  The operative pleadings and motions at issue are summarized as follows:

1.      **Plaintiff's Fourth Amended Complaint**

Defendants Renz, Dennison and Mrs. Umstead have filed largely identical motions for summary judgment directed to all sixteen claims alleged in the FAC.  Dkt. 283, 308, 313, 314.

Defendant Hoyt also has filed a motion to dismiss the first claim under CERCLA § 107 and second claim under HSAA.  Dkt. 284.

Separately, Hoyt moves for partial summary judgment on Plaintiff's fourteenth claim for trespass.  Dkt. 306.

2.      **Mrs. Umstead's Second Amended Cross-Claim**

Mrs. Umstead's Second Amended Cross-Claim is brought against all other Defendants in this action.  Dkt. 282.  As part of its motion to dismiss certain claims alleged in the FAC, Hoyt also moves to dismiss Umstead's first crossclaim under CERCLA § 107, second crossclaim under CERCLA § 113, third crossclaim for negligence, and sixth claim for nuisance.  Dkt. 284.  Mrs. Umstead has agreed to voluntarily dismiss her nuisance crossclaim.

3.      **Mrs. Umstead's Second Amended Third Party Complaint**

Mrs. Umstead's Third Party Complaint is brought, inter alia, against Vic, which manufactured dry cleaning equipment purchased by Mr. Umstead, and Bowe, which later acquired Vic.  Dkt. 205.  Bowe and Vic have filed a motion for judgment on the pleadings,

Dkt. 311, and a motion for summary judgment, Dkt. 312, both of which are directed to all claims asserted against them.  As will be discussed below, the Court finds that Bowe and Vic's summary judgment is dispositive, and for that reason, the Court does not address the motion for judgment on the pleadings.

### 4.    Renz's Amended Cross-Complaint

Renz's Amended Cross-Complaints in Response to the Fourth Amended Complaint alleges five crossclaims against all other Defendants.  Dkt. 309.  Hoyt moves to dismiss Renz's CERCLA and HSAA crossclaims on the same grounds that it is seeking dismissal of Plaintiff and Umstead's CERLCA and HSAA claims.  Dkt. 333.[3]

## II.    LEGAL STANDARDS

### A.    MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P. 56(a)(1).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Id.; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The movant bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A).  If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  See Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'"

---

[3] Certain of the parties have filed objections to evidence submitted in connection with the instant motions.  Dkt. 362, 324-5.  Mrs. Umstead also objects to Bowe and Vic's unauthorized supplemental brief.  Dkt. 369.  Because the Court's analysis does not rely on any of the disputed evidence or briefing, the objections are overruled as moot.

1  Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting in part Scott v. Harris, 550 U.S.

2  372, 380 (2007)). "Only disputes over facts that might affect the outcome of the suit under

3  the governing law will properly preclude the entry of summary judgment.  Factual disputes

4  that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248.  A

5  factual dispute is genuine if it "properly can be resolved in favor of either party." Id. at

6  250.  Accordingly, a genuine issue for trial exists if the non-movant presents evidence from

7  which a reasonable jury, viewing the evidence in the light most favorable to that party,

8  could resolve the material issue in his or her favor. Id.  "If the evidence is merely

9  colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-

10  50 (internal citations omitted).  Only admissible evidence may be considered in ruling on a

11  motion for motion for summary judgment. Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir.

12  2002).

13       **B.**    **MOTION TO DISMISS**

14       Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal for failure to state a

15  claim can be based on either: (1) the lack of a cognizable legal theory; or (2) insufficient

16  facts to support a cognizable legal claim. Balistreri v. Pacifica Police Dep't, 901 F.2d 696,

17  699 (9th Cir. 1988).  In considering a Rule 12(b)(6) motion, the court is to "accept all

18  factual allegations in the complaint as true and construe the pleadings in the light most

19  favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506

20  F.3d 895, 899-900 (9th Cir. 2007).  The plaintiff's factual allegations "must be enough to

21  raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S.

22  544, 556 (2007).  A complaint that raises only "the mere possibility of misconduct" does

23  not establish that the plaintiff is entitled to relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950

24  (2009).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

25  requires more than labels and conclusions, and a formulaic recitation of the elements of a

26  cause of action will not do." Twombly, 550 U.S. at 555.  "If a complaint is dismissed for

27  failure to state a claim, leave to amend should be granted unless the court determines that

28  the allegation of other facts consistent with the challenged pleading could not possibly cure

the deficiency."  <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986).

## III.   <u>RENZ AND DENNISON'S MOTIONS FOR SUMMARY JUDGMENT</u>

Renz and Dennison have separately filed motions for summary judgment, which are directed to all claims alleged in the FAC.  Dkt. 313, 314.  Each of these Defendants is represented by the same counsel, and their respective motions for summary judgment motions are virtually identical—as are Plaintiff's responses to the motions.  Dkt. 313, 314, 325, 326.  Since the motions present essentially the same facts and issues, the Court analyzes them together.

### A.   CERCLA

#### 1.   Overview

Plaintiff seeks recovery of response costs under CERCLA § 107(a) (first claim) and contribution under CERCLA § 113(f) (sixteenth claim).  Congress enacted CERCLA to "ensure the prompt and effective cleanup of waste disposal sites," and to "assure that parties responsible for hazardous substances [bear] the cost of remedying the conditions they created."  <u>Pinal Creek Group v. Newmont Mining Corp.</u>, 118 F.3d 1298, 1300 (9th Cir. 1997).  To accomplish these goals, CERCLA permits private parties engaged in the clean-up of hazardous wastes to bring two types of actions: (1) a cost recovery action against responsible parties to recover response costs already incurred in cleaning up hazardous waste so long as such costs were necessary and consistent with the national contingency plan, 42 U.S.C. § 9607(a)(4)(B); and (2) a claim for contribution from responsible parties in which the Court allocates the defendant's share of liability for past and future response costs, 42 U.S.C. §§ 9613(f)(1), (g)(2).

Claims for cost recovery and contribution may be pursued against four categories of "potentially responsible parties" or "PRPs."  42 U.S.C. §§ 9607(a), 9613(f).  The four categories of PRPs are defined by statute, as follows:

(**1**) the *owner and operator* of … a facility,

**(2)** any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

**(3)** any person who by contract, agreement, or otherwise *arranged for disposal or treatment*, or arranged with a transporter for transport for disposal or treatment, of *hazardous substances owned or possessed by such person*, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

**(4)** any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance . . . .

42 U.S.C. § 9607(a) (emphasis added).

To establish a prima facie case for cost recovery or contribution, the plaintiff must show that: (1) the property at issue is a "facility" as defined in 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of a "hazardous substance" has occurred; (3) the "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan"; and (4) the defendants are in one of four classes of persons subject to liability under § 9607(a).  See City of Colton v. Am. Promotional Events, Inc.-West , 614 F.3d 998, 1002-03 (9th Cir. 2010).

### 2.   Release

Renz and Dennison contend that they are entitled to summary judgment on Plaintiff's CERCLA claims on the ground that there is no evidence to support its contention that there was a "release" of PCE onto the Property between February 1975 and May 1977,

the time period during which they operated Cal Cleaners.  Renz Mot. at 9-10, Dkt. 314; Dennison Mot. at 9-10, Dkt. 313.[4]

Under CERCLA, "release" is defined as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or *disposing* into the environment...." 42 U.S.C. § 9601(22) (emphasis added); Cal. Health & Safety Code § 25320.  The term "disposing" is defined by reference to RCRA, which defines "disposal" as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters."  42 U.S.C. § 6903(3).  "Release" is broader than "disposal," "because the definition of 'release' includes 'disposing' (also, it includes 'passive' terms such as 'leaching' and 'escaping,' which are not included in the definition of 'disposal')." Pakootas v. Teck Cominco Metals, Ltd., 452 F.3d 1066, 1078 n.17 (9th Cir. 2006).

Here, Renz and Dennison contend, in an entirely conclusory manner, that "[t]here is no evidence that during the time period there was a single release of PCE that caused any damage to Plaintiff," and that "Plaintiff's experts testified that they will not be able to relate any release of PCE to any specific time period."  Renz Mot. at 9, Dkt. 313; Dennison Mot. at 9, Dkt. 314.  However, neither motion provides any citations to the record to support

---

[4] Renz and Dennison make a general argument that they are entitled to summary judgment with respect to all of Plaintiff's claims on the ground that there is no evidence of a "release," as that term is used in CERCLA.  However, as will be discussed, the term "release" has a specific meaning under CERCLA, and neither Renz nor Dennison has made any showing that the alleged lack of a "release" under CERCLA is dispositive of all of Plaintiff's other statutory and common law claims.  As such, the Court does not reach the merits of this argument, as it not the role of the Court to make parties' arguments for them. See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").

these contentions.  See Fed. R. Civ. P. 56(c)(1).[5]  The Court is not obligated to consider matters not specifically brought to its attention.  See Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide:  Fed. Civ. Pro. Before Trial § 14.145.2 (TRG 2009); Indep. Towers of Wash., 350 F.3d at 929 ("judges are not like pigs, hunting for truffles buried in briefs") (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).  Although Plaintiff's opposition briefs are equally deficient, Renz and Dennison bear the initial burden of demonstrating their entitlement to summary judgment.  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 -1103 (9th Cir. 2000) ("If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial.").  Having failed to carry such burden, Renz and Dennison's summary judgment motions are DENIED with respect to Plaintiff's CERCLA claims.

**B.    HSAA**

California's HSAA, the state counterpart to CERCLA, also creates a private right of action such that "[a]ny person who has incurred removal or remedial action costs in accordance with [HSAA] or [CERCLA] may seek contribution or indemnity from any [responsible person]…."  Cal. Health & Safety Code § 25363(e).  HSAA embodies the same concept of PRPs as CERCLA, and adopts CERCLA's definition of responsible parties by reference.  Id. § 25323.5(a) ("'Responsible party' or 'liable person,' for the purposes of this chapter, means those persons described in Section 107(a) of the federal act (42 U.S.C. Sec. 9607(a)).").  Renz and Dennison's arguments with respect to Plaintiff's HSAA claim are the same as those pertaining to Plaintiff's CERCLA claims.  Therefore, for the same reasons, Renz and Dennison's motions for summary judgment are DENIED with respect to Plaintiff's second claim under HSAA.

---

[5] Rule 56(c)(1) specifically provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: [¶] citing to particular parts of materials in the record …; or … showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

**C.** **EQUITABLE INDEMNITY, DECLARATORY RELIEF, NUISANCE, NEGLIGENCE AND TRESPASS**

Renz and Dennison move for summary judgment on Plaintiff's third claim for equitable indemnity, fourth claim for declaratory relief, sixth claim for continuing private nuisance, seventh claim for continuing public nuisance, eighth claim for public nuisance per se, ninth claim for negligence, tenth claim for negligence per se and fourteenth claim for continuing trespass. Renz Mot. at 11, Dkt. 314; Dennison Mot. at 11, Dkt. 313. They assert that "[i]n order to prove each of these common law claims against Renz, Plaintiff must demonstrate—at a minimum—that Renz was factually responsible for the release of PCE to the environment.… There is no evidence that Defendant – released any PCE." Id. As support, Renz and Dennison offer a string citation to various cases and California civil jury instructions, without providing any explanation or analysis of how these authorities support their position. As noted, this type of conclusory argument is improper. See Indep. Towers of Wash., 350 F.3d at 929; Hibbs v. Dept. of Human Resources, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (finding argument "too undeveloped to be capable of assessment"). In addition, Renz and Dennison fail to provide citations to the record to support their factual assertions, in contravention of Rule 56. Given these deficiencies, the Court finds that Renz and Dennison have failed to carry their initial burden on summary judgment, and therefore, DENIES their motions with respect to the aforementioned claims.

**D.** **CERCLA, PORTER-COLOGNE ACT AND RCRA**

Next, Renz and Dennison contend that they are entitled to summary judgment on Plaintiff's first and sixteenth claims under CERCLA, second claim under HSAA, fifth claim under the Porter-Cologne Act and fifteen claim under RCRA on the ground that there is no evidence that they acted "without due care." Renz Mot. at 10, Dkt. 314; Dennison Mot. at 10, Dkt. 314. Again, neither Defendant cites any legal authority or provides any citations to the record to support their arguments. Therefore, the Court DENIES their motions for summary judgment as to these particular claims.

1

2

### E.   BREACH OF LEASE

Plaintiff's eleventh claim for breach of lease as to Renz and Dennison is based on the 1974 Lease, which is the only lease to which they were parties.  The statute of limitations for a breach of lease claim is four years.  Cal. Cod. Civ. P. § 337(1).  Renz and Dennison contend that any such claim accrued by no later than 1983, the date the 1974 Lease expired, and that Plaintiff filed suit more than four years after the date of accrual. Renz Mot. at 12, Dkt. 314; Dennison Mot. at 12, Dkt. 313.  However, Plaintiff's breach of lease claim is subject to tolling.  O'Connor v. Boeing N. Am., Inc., 311 F.3d 1139, 1147-48 (9th Cir. 2002) (finding CERCLA's tolling provision applicable to state law claims).  Since Plaintiff filed suit less than four years after learning in 2006 that the Property was contaminated, the Court is foreclosed from concluding, as a matter of law, that Plaintiff's claim is time-barred.  Accordingly, Renz and Dennison's motions for summary judgment are DENIED with respect to Plaintiff's claim for breach of lease.

### F.   EXPRESS CONTRACTUAL INDEMNITY

Plaintiff's twelfth claim for express contractual indemnity is based on Paragraph 8 of the Lease, which states:

> 8.  Lessee, as a material part of the consideration to be rendered to Lessor, hereby waives all claims against Lessor for damages to goods, wares and merchandise, and all other *personal property* in, upon or about said premises and for injuries to person in or about said premises from any cause arising at any time, and Lessee will hold Lessor exempt and harmless from any damage or injury to any person, or the *goods, wares and merchandise and all other personal property* of any person, arising from the use of the premises by Lessee, *or from the failure of Lessee to keep the premises in good condition and repair as herein provided*.

FAC Ex. B ¶ 8 (emphasis added), Dkt. 281-3.  Renz and Dennison take the position that the aforementioned indemnification clause applies *only* to personal property, and does not obligate them to indemnify Plaintiff for damage to *real property*, such as that caused by the PCE contamination.  Renz Mot. at 12-13, Dkt. 314; Dennison Mot. at 12-13, Dkt. 313.

1    "In general, indemnity refers to the obligation resting on one party to make good a

2    loss or damage another party has incurred."  Prince v. Pac. Gas & Elec. Co., 45 Cal.4th

3    1151, 1157 (2009) (internal quotations and citation omitted).  An indemnity agreement is

4    construed under the same rules that govern the interpretation of other contracts.  Crawford

5    v. Weather Shield Mfg., Inc., 44 Cal.4th 541, 552 (2008).  In interpreting such an

6    agreement, effect is to be given to the parties' mutual intent, as ascertained from the

7    contract's language, if it is clear and explicit.  Id.; see Cal. Civ. Code, §§ 1636, 1638, 1639.

8    "Unless the parties have indicated a special meaning, the contract's words are to be

9    understood in their ordinary and popular sense."  Crawford, 44 Cal.4th at 552; Cal. Civ.

10   Code § 1644.  The contract must be construed as a whole and interpreted in context so as to

11   give effect to each provision, rather than interpret contractual language in isolation.

12   SDC/Pullman Partners v. Tolo Inc., 60 Cal.App.4th 37, 46 (1997) (citing Cal. Civ. Code

13   § 1641).  The interpretation of a contract generally presents a question of law for the court

14   to decide, unless the interpretation turns on the credibility of extrinsic evidence.  Plaza

15   Home Mortg., Inc. v. N. Am. Title Co., Inc., 184 Cal.App.4th 130, 135 (2010).

16       Applying the aforementioned rules of contract interpretation, the Court agrees that

17   Paragraph 8 of the Lease does not obligate Renz or Dennison to indemnify Plaintiff for

18   PCE contamination of the Property.  The clause requires them to provide indemnification

19   for "damage or injury" to any person or his or her "*personal property*."  FAC Ex. B ¶ 8,

20   Dkt. 283.  No mention is made of indemnifying Plaintiff for damage to *real* property.

21   Plaintiff does not directly respond to Renz and Dennison's argument, but instead asserts

22   that the subsequent reference to "the failure of Lessee to keep *the premises* in good

23   condition and repair" should be construed to include damages to real property.  Pl.'s Opp'n

24   at 7, Dkt. 325 (emphasis added).  The flaw in Plaintiff's argument is that it ignores the

25   definition of "premises" in the Lease, which states:

26           1.     Premises.

27                  (a)     Landlord leases to Tenant and Tenant hires from
         Landlord those certain premises ("Premises") described as
28       follows: *A portion of that certain single-story commercial store
         building* located on the easterly line of Telegraph Avenue,

approximately 305 feet southerly from the south line of Dwight Way and more specifically described as the northern most two stores in said building, being stores #1 and #2, and having frontage on Telegraph Avenue approximately 47 feet and an approximate depth of 66 feet, and known as <u>2529 Telegraph Avenue</u>.

FAC Ex. B ¶ 1 (emphasis added).  Notably, the definition of "Premises" only refers to the physical building, and makes no mention of real property on which the building is situated. Had the parties intended the indemnification clause include injury to real property, they could have included such language in the Lease.  It is well settled that the Court cannot impose contractual obligations which are absent from the parties' agreement.  See <u>Vons Cos., Inc. v. United States Fire Ins. Co.</u>, 78 Cal.App.4th 52, 59 (2000) ("We do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there.").  Thus, the Court GRANTS Renz and Dennison's motions for summary judgment as to Plaintiff's claim for express contractual indemnity.[6]

### G.   SUMMARY OF RULING

The Court GRANTS Renz and Dennison's motions for summary judgment as to Plaintiff's twelfth claim for express contractual indemnity, and DENIES their summary judgment motions in all other respects.

## IV.   MRS. UMSTEAD'S MOTION FOR SUMMARY JUDGMENT

### A.   RELEASE

Mrs. Umstead moves for summary judgment, or alternatively, partial summary judgment as to all claims alleged against her in the FAC.  As an initial matter, Mrs. Umstead, like Renz and Dennison, argues that all of Plaintiff's statutory, common law and

---

[6] The Court notes that under California law, where "the parties have expressly contracted with respect to the duty to indemnify, the extent of the duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity." <u>Rossmoor Sanitation, Inc. v. Pylon, Inc.</u>, 13 Cal.3d 622, 628 (1975).  Here, the fact that the parties' relationship in this case is governed by an express indemnity clause arguably forecloses Plaintiff's claim for equitable indemnity.  See <u>Maryland Cas. Co. v. Bailey & Sons, Inc.</u>, 35 Cal.App.4th 856, 864, 872-73 (1995) (holding that equitable indemnity claims were "barred by the express indemnity provisions in the parties' contracts").  However, neither Renz nor Dennison Umstead moved for summary judgment on this ground.

1    contractual claims fail as a matter of law based on Plaintiff's failure to present evidence

2    that any "release" of hazardous substances occurred between 1983 and 1986.  Umstead

3    Mot. at 6-7, Dkt. 308; FAC ¶ 17, Dkt. 283.[7]  And like Renz and Dennison, Umstead also

4    fails to provide the Court with any legal authority for the proposition that the lack of a

5    "release," as that term is used in CERCLA, necessarily means that all of Plaintiff's claims

6    necessarily fail as well.  Because of Mrs. Umstead's deficient briefing, the Court declines

7    to consider her argument that she is entitled to summary judgment based on the lack of a

8    release.

9         The above notwithstanding, the Court will address the parties' dispute regarding the

10   timeframe at issue with respect to Mrs. Umstead's potential liability.  Paragraph 17 of the

11   FAC alleges that "Wiley Umstead and Kazuko Umstead (collectively 'the Umsteads')

12   operated a dry cleaning business at the Property from on or about 1983 until on or about

13   August 1986."  FAC ¶ 17, Dkt. 283.  Mrs. Umstead contends that based on these

14   allegations, Plaintiff must show that a release occurred during that timeframe.  Plaintiff

15   disputes this, and insists that "the proper time period for consideration actually is 1977 and

16   1986," and that the reference to "1983" simply was a mistake.  Pl.'s Opp'n at 5, Dkt. 324.

17   Plaintiff asserts that it should not be strictly held to the 1983 date because it prefaced its

18   allegation with the phrase "on or about," and because there record allegedly shows that the

19   Umsteads took over Cal Cleaners in 1977.  Id.  Plaintiff attempts to minimize its pleading

20   error as being nothing more than a "mere" technicality, and insists that the Court grant it

21   leave to amend its pleadings to conform to the evidence.  Id.

22        Federal Rule of Civil Procedure 15(b) "permits the amendment of pleadings to

23   conform to the evidence when the parties expressly or impliedly consent to the trial of

24   unpleaded issues."  Galindo v. Stoody Co., 793 F.2d 1502, 1512-1513 (9th Cir. 1986).

25

26   [7] Plaintiff contends that "the issue is not one of release but of disposal…."  Pl.'s
     Opp'n at 5, Dkt. 324.  Yet, throughout its pleadings, Plaintiff alleges that Defendants'
     putative liability is predicated on the "release" as opposed to the "disposal" of PCE.  See,
27   e.g., FAC ¶ 22, 27, 28.  The term "disposal" is mentioned, but only in the context of the
     allegations directed towards Hoyt.  See id. ¶ 16.  In any event, as will be discussed infra,
28   Plaintiff's claims fail under either theory.

1   A request to amend may properly be presented in an opposition to a motion for summary

2   judgment.  Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994).  If leave is granted, a

3   formal amendment is not required.  Galindo, 793 F.2d at 1513 n.8.  Leave to amend is a

4   matter of the Court's discretion, based upon consideration of the following factors:  "bad

5   faith, undue delay, prejudice to the opposing party, and the futility of amendment."

6   Kaplan, 49 F.3d at 1370.

7          Based on the record presented, the Court concurs with Mrs. Umstead that permitting

8   Plaintiff to expand the relevant time period by an additional six years—from 1983-1986 to

9   1977-1986—would be unduly prejudicial.  Since filing this action over three years ago,

10  Plaintiff consistently has alleged that "Wiley Umstead and Kazuko Umstead (collectively

11  'the Umsteads') operated a dry cleaning business at the Property from on or about 1983

12  until on or about August 1986."  Compl. ¶ 15, Dkt. 1.  This allegation has been restated

13  verbatim in each of Plaintiff's four subsequent amended complaints.  See First. Am.

14  Compl. ¶ 15, Dkt. 11; Sec. Am. Compl. ¶ 15, Dkt. 102; Third Am. Compl. ¶ 17, Dkt. 204;

15  FAC ¶ 17, Dkt. 283.  The purpose of a pleading to "give the defendant fair notice of what

16  the … claim is and the grounds upon which it rests."  Twombly, 550 U.S. at 555 (internal

17  quotation and modification omitted).  Consequently, Mrs. Umstead is entitled to rely on the

18  allegations that her responsibility for the contamination is limited to the 1983-1986

19  timeframe.  The Court finds that it would be highly prejudicial to allow Plaintiff to expand

20  Mrs. Umstead's potential liability by expanding the relevant time period by more than

21  double on the eve of trial.

22         Plaintiff counters that Mrs. Umstead cannot legitimately claim that prejudice will

23  result by the proposed amendment given that, in her Third Party Complaint filed on January

24  29, 2009, she alleged that "[she] assumed a lease of the PROPERTY, entered into a new

25  lease of the PROPERTY and/or operated a dry-cleaning business during and covering the

26  time period from in or about 1977 until in or about August of 1986[.]"  Third Party Compl.

27  ¶ 12, Dkt. 150.  Plaintiff is mixing apples with oranges.  While Mrs. Umstead may have

28  alleged that she assumed the Lease in 1977, she did not claim that she began operating Cal

Cleaners at that time.  Moreover, Plaintiff's argument cuts both ways.  While Mrs.

Umstead's allegations could arguably suggest that she had contemplated the scope of her

potential liability as encompassing the time period from 1977 to 1986, it also begs the

question why Plaintiff did not correct the alleged pleading error sooner.  Both the Third and

Fourth Amended Complaints were filed well *after* Mrs. Umstead filed her Third Party

Complaint.  Yet, Plaintiff continued to predicate Mrs. Umstead's liability based on releases

occurring only during 1983 to 1986.  As a result, it is entirely reasonable for Mrs. Umstead

to presume that her legal exposure was limited to alleged releases during the timeframe

alleged in the pleadings.  Also, the fact that Plaintiff has had multiple opportunities to

amend its pleadings but failed to include the "correct" time period also weighs against

permitting Plaintiff leave to amend.  See Mir v. Fosburg, 646 F.2d 342, 347 (9th Cir. 1980)

(court's discretion to deny leave to amend especially broad "when the court has already

given a plaintiff one or more opportunities to amend his complaint.").  Therefore, the Court

DENIES Plaintiff's motion for leave to amend, and finds that the relevant time period for

evaluating Mrs. Umstead's liability is from 1983 to 1986, as set forth in Paragraph 17 of the

FAC.

>    **B.   CERCLA AND HSAA**

>         **1.    Owner and Operator**

The next issue presented is whether Plaintiff can demonstrate that Mrs. Umstead is a

PRP subject to liability under CERCLA.  As discussed above, liability under CERCLA and

HSAA attaches only if the defendant qualifies as a PRP under at least one of the four

subsections of 42 U.S.C. § 9607(a).[8]  The "owner and operator" of a "facility" is one of the

four classes of PRPs.  Id. § 9607(a)(1).  In its first claim under CERCLA, Plaintiff alleges

that "Defendants, with the exception of Hoyt Corporation, are past and current *operators* of

the Property."  FAC ¶ 28 (emphasis added), Dkt. 283.  In its second claim under HSAA,

---

[8] Because the HSAA incorporates 42 U.S.C. § 9607 to determine covered parties,
see Cal. Health & Safety Code § 25323.5(a), the Court's discussion of Mrs. Umstead's
CERCLA liability applies equally to Plaintiff's second claim under the HSAA.

Plaintiff alleges that "Defendants, and each of them, are liable as persons under the HSAA due to their status as either *owners* or the property or *arrangers* of the disposal and discharge of hazardous substances…." Id. ¶ 37 (emphasis added).

Mrs. Umstead contends that she is not a proper party to Plaintiff's CERCLA or HSAA claims because she is neither an "owner" nor "operator" under 42 U.S.C. § 9607(a)(1).[9]  Although CERCLA uses the conjunctive term "owner *and* operator," the Ninth Circuit has construed the term in the disjunctive; that is, a person can be liable as either an owner *or* an operator. City of Los Angeles v. San Pedro Boat Works, 635 F.3d 440, 450-51 (9th Cir. 2011) ("San Pedro").[10]  The Ninth Circuit has narrowly construed "owner" to mean the holder in fee title to the property or its equivalent. Id. (citing Long Beach Unified Sch. Dist. v. Dorothy B. Godwin Cal. Living Trust, 32 F.3d 1364, 1368 (9th Cir. 1994) ("Long Beach")).  In contrast, CERCLA "operator" liability is broader, and may be shown where "the defendant had authority to control the cause of the contamination at the time the hazardous substances were released into the environment." Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp., 976 F.2d 1338, 1341 (9th Cir. 1992) ("Kaiser").  In other words, the alleged operator "must play an active role in running the facility, typically involving hands-on, day-to-day participation in the facility's management." Long Beach, 32 F.3d at 1367.

Although the tests for "owner" and "operator" liability are separate and distinct, Plaintiff makes no effort to distinguish between them.  Instead, Plaintiff insists that Mrs. Umstead may be deemed to be "an owner and/or operator for purposes of CERCLA" ostensibly because she, along with her husband, countersigned the 1977 Assignment in which Renz and Dennison, the original owners of Cal Cleaners, assigned their Lease to the Umsteads. See Pl.'s Opp'n at 7-8, Dkt. 324; Culver Decl. Ex. B, Dkt. 324-2.  However, the

---

[9] Although the pleading allege that all Defendants also are arrangers, Plaintiff does not take that position in its opposition brief.  Instead, Plaintiff maintains that Mrs. Umstead is liable as an owner and/or operator.

[10] CERCLA defines "owner and operator" to mean:  "any person owning or operating [a] facility." 42 U.S.C. § 9601(20)(A)(ii).

1   fact that Mrs. Umstead co-signed the 1977 Assignment is inapposite to whether she can be

2   held liable as an "owner" or "operator."  To be an "owner," the person must hold fee title or

3   an equivalent "bundle of rights" in the property.  San Pedro, 635 F.3d at 448-49, 452 n.10.

4   A lease merely confers a possessory interest in property, as opposed to title ownership.  Id.

5   at 440 (citing Auerbach v. Assessment Appeals Bd. No. 1., 39 Cal.4th 153, 163 (2006)).

6   The lease assignment also did not confer upon the lessee the same bundle of rights as a fee

7   holder, since it permitted Plaintiff, the undisputed fee title owner, to retain power to control

8   the lessee's use of the Property.  See Culver Decl. Ex. B (Ex. 2 to Umstead Depo.), Dkt.

9   65-2.  For these reasons, Mrs. Umstead cannot be held liable as an "owner" under

10  § 9607(a).

11       Nor does Mrs. Umstead's signature on the 1977 Assignment raise a genuine issue of

12  material fact as to whether she could be liable as an "operator" under CERCLA.  According

13  to Plaintiff, the fact that Mrs. Umstead co-signed the lease assignment, coupled with the

14  statement in deposition that she shared in some of the profits from the operation of Cal

15  Cleaners, constitutes proof that she was part-owner of the business.  This argument misses

16  the mark.  Neither of these facts ipso facto establishes that she either owned the business

17  or—more significantly—that she possessed any authority to control or, in fact, exercised

18  actual control over, the operations of Cal Cleaners.  To the contrary, the record establishes

19  that Mr. Umstead both owned and operated the business.  Renz testified during his

20  deposition that he sold Cal Cleaners to Mr. Umstead, as opposed to Mrs. Umstead.  Adam

21  Decl. Ex. D at 19:1-5, 20:9, 67:3-11, Dkt. 308-3.  The sale to Mr. Umstead was

22  memorialized in a Notice of Bulk Transfer and a Receipt and Agreement, both of which

23  identify Mr. Olmstead as the purchaser.  Id. Ex. D (Exs. 8 and 9 to Renz Depo.).  Mrs.

24  Umstead's name appears nowhere in these documents nor did she sign them.  Id.

25       As for Mrs. Umstead's involvement in the business, it was limited to tasks akin to

26  that of employee; i.e., occasional sewing, hanging clothes, counterwork and keeping the

27  premises tidy.  Adam Decl. Ex. D at 48:16-17, 164:24-165:15; Ex. E at 41:4-2-11, Dkt.

28  308-3; Culver Decl. Ex. C at 6:24-7:5, Dkt. 324.  In fact, Plaintiff concedes that Mrs.

Umstead "rarely worked" at the dry cleaners and that she "left management of the business to Wiley Umstead[.]"  Pl.'s Opp'n at 2, 9, Dkt. 324.  The limited evidence presented by Plaintiff does not show that Mrs. Umstead had authority to control the cause of the contamination at the time the hazardous substances were released into the environment or that she engaged in hands-on, day-to-day participation in the management of Cal Cleaners.  See Kaiser, 976 F.2d at 1341; Long Beach, 32 F.3d at 1367.

Next, Plaintiff attempts to make much of Mrs. Umstead's supposed admission that she transferred *her* interest in Cal Cleaners' equipment to its next operator, Won Jae Yi, in 1986.  Pl.'s Opp'n at 8-9, Dkt. 324.  In particular, Plaintiff cites a snippet from Mrs. Umstead's deposition testimony wherein she was questioned regarding a UCC Financing Statement that she and her husband had signed on or about September 10, 1986.  Pl.'s Opp'n at 8, Dkt. 324.[11]  When queried by Plaintiff's counsel whether she knew the purpose of this document, Mrs. Umstead responded that she thought it may have related to the transfer of the business from both her and her husband to Yi.  See Pl.'s Opp'n at 8, Dkt. 324; Culver Decl. Ex. C at 26:5-27:23, Dkt. 324-2.  However, Mrs. Umstead's apparent subjective belief regarding the purpose of the UCC Financing Statement fails to controvert the overwhelming record evidence establishing that Renz and Dennison sold Cal Cleaners solely to Mr. Umstead.  The probative value of this particular testimony also is undercut by Mrs. Umstead's subsequent testimony that she did not, in fact, understand the purpose of the UCC Financing Statement.  Supp. Adam Decl. Ex. J at 134:6-8, Dkt. 339-1.  But even if Mrs. Umstead's statement could be construed as an admission of partial ownership, the fact remains that ownership alone does not satisfy the requisite showing for "operator" liability under Kaiser and Long Beach—neither of which is cited anywhere in Plaintiff's brief.

---

[11] The purpose of a UCC Financing Statement "is to give an existing or prospective creditor the opportunity to inform himself of whether, and of the extent to which, an existing or prospective debtor has encumbered his assets and to govern himself accordingly in dealing with the debtor."  Borg-Warner Acceptance Corp. v. Bank of Marin, 36 Cal.App.3d 286, 288-289 (1973).

### 2.    Other Contentions

As alternative matter, Plaintiff contends that Mrs. Umstead is a "covered person" under federal and state environmental laws, pursuant to California community property laws.  Pl.'s Opp'n at 9-10, Dkt. 324.  Specifically, Plaintiff claims that under California Family Code § 760, "Cal Cleaners is presumed to be a community property business."  Id. at 9.  Similarly, Plaintiff argues that Mrs. Umstead became a de facto partner in the business by virtue of sharing in the profits of Cal Cleaners.  Id.  However, Plaintiff fails to cite any legal authority for the proposition that Mrs. Umstead's community property or de facto partnership interest in Cal Cleaners necessarily transmutes her into a PRP within the meaning of 42 U.S.C. § 9607(a).[12]  In addition, Plaintiff completely ignores that the relevant question for determining operator liability is whether the defendant played an active role in running the facility.  See Long Beach, 32 F.3d at 1367.  By Plaintiff's own admission, Omstead did not.  Pl.'s Opp'n at 2, 9, Dkt. 324.

Finally, citing California Probate Code § 13550, Plaintiff posits that even if Mrs. Umstead is not a PRP, she nonetheless bears personal liability for her late husband's liabilities on the theory that his estate did not go through probate.  Id. at 2, 9.  Setting aside Plaintiff's failure to support this assertion with any evidence, this contention is specious.  "Probate Code section 13550 prescribes the manner and extent to which a surviving spouse remains personally liable for the *debts* of a deceased spouse."  Collection Bureau of San Jose v. Rumsey, 24 Cal.4th 301, 303 (2000) (emphasis added).  The purpose of this provision is to protect creditors to ensure the payment of preexisting debts.  See Weinberg v. Weinberg, 67 Cal.2d 557, 562-62 (1967).  This provision has no application here because Plaintiff is not a creditor attempting to collect on a debt existing when Mr. Umstead died.

---

[12] Plaintiff's citation to Chesapeake and Potomac Telephone Co. of Virginia v. Peck Iron & Metal Co., Inc., 814 F.Supp. 1269, 1280-81 (E.D. Va. 1992) for the proposition that partners may be held liable under CERCLA is misplaced.  The issue in that case was whether defendants could rely on the "innocent landowner" defense, which required them to show that they did not know and had no reason to know that any hazardous substance was disposed of on, in or at the facility.  Id. (citing 42 U.S.C. § 9601(35)(A)(i)).  In this case, the Property was owned by Plaintiff—not Umstead.

1  Tellingly, Plaintiff fails to cite any cases to support its assertion that Probate Code § 13550

2  may be utilized in circumstance such as those presented.

3        **C.**     **PORTER-COLOGNE ACT**

4        Plaintiff's fifth claim for relief seeks contribution of response costs incurred in the

5  remediation of the Property, pursuant to California's Porter-Cologne Act, Cal. Water Code

6  § 13350(i).  See FAC ¶ 48, Dkt. 283.  The Porter-Cologne Act provides that a contribution

7  claim may be brought against "[a]ny person who has discharged or discharges waste ... or

8  who has caused or permitted, causes or permits, or threatens to cause or permit any waste to

9  be discharged or deposited where it is, or probably will be, discharged into the waters of the

10 state and creates, or threatens to create, a condition of pollution or nuisance."  Cal. Water

11 Code § 13304(a).  The Act derives from the common law of nuisance.  City of Modesto

12 Redevelopment Agency v. Super. Ct., 119 Cal.App.4th 28, 38 (2004).  Thus, the relevant

13 question for purposes of liability is "whether the defendant created or assisted in the

14 creation of the nuisance."  Id.

15       As discussed, Plaintiff acknowledges that Mr. Umstead managed Cal Cleaners and

16 that Mrs. Umstead worked there only occasionally.  See Pl.'s Opp'n at 2, 9, Dkt. 324.  And,

17 as discussed above, the record confirms that the business was owned and operated by Mr.

18 Umstead.  Given the lack of evidence sufficient to raise a genuine issue of fact regarding

19 Mrs. Umstead's involvement in the operation and management of Cal Cleaners, the Court

20 GRANTS her motion for summary judgment with respect to Plaintiff's claim under the

21 Porter-Cologne Act.

22       **D.**     **BREACH OF LEASE**

23       Mrs. Umstead contends that Plaintiff's eleventh claim for breach of lease is time-

24 barred, and makes almost the identical legal argument presented by Renz and Dennison in

25 their respective summary judgment motions.  See Umstead Mot. at 11, Dkt. 308.  The Court

26 has concluded above that Plaintiff's breach of lease claim is subject to tolling based on

27 Plaintiff's failure to discover the PCE contamination until 2006.  Thus, the Court DENIES

28

1  Mrs. Umstead's motion for summary judgment as to Plaintiff's eleventh claim for breach of

2  lease.

3         **E.**       **EXPRESS CONTRACTUAL INDEMNITY**

4         Mrs. Umstead moves for summary judgment on Plaintiff's twelfth claim for express

5  contractual indemnity on the identical grounds set forth in Renz and Dennison's motions.

6  Umstead Mot. at 12-13, Dkt. 308.  Likewise, Plaintiff's arguments in response to Mrs.

7  Umstead's motion are the same as those presented in its oppositions to Renz and

8  Dennison's briefs.  Pl.'s Opp'n at 11-12, Dkt. 324.  Accordingly, the Court GRANTS Mrs.

9  Umstead's motion for summary judgment as to Plaintiff's claim for express contractual

10  indemnity.

11         **F.**       **WASTE**

12         Mrs. Umstead contends that Plaintiff's thirteenth cause of action for waste is barred

13  for the same reason that its breach of lease claim ostensibly fails.  Umstead Mot. at 11, Dkt.

14  308.  However, since the Court has denied Mrs. Umstead's motion with respect to

15  Plaintiff's breach of lease claim, the Court also DENIES her motion as to Plaintiff's claim

16  for waste.

17         **G.**       **RCRA**

18         Plaintiff's fifteenth claim is based on RCRA, 42 U.S.C. § 6972(a)(1)(B), which

19  authorizes a civil action against "any person ... including any past or present *generator* who

20  has *contributed* or who is contributing to the past or present handling, storage, treatment,

21  transportation, or disposal of any solid or hazardous waste which may present an imminent

22  and substantial endangerment to health or the environment."  (Emphasis added).  A

23  generator is "any person, by site, whose act or process produces hazardous waste …."

24  40 C.F.R. § 260.10.  The term "has contributed or is contributing to" requires a showing of

25  "active involvement in handling or storing of materials for liability."  Hinds Inv., L.P. v.

26  Team Enters., Inc., No. CV F 07–0703 LJO GSA, 2010 WL 1663986, at *12 (citing

27  Sycamore Indus. Park Assocs. v. Ericsson, Inc., 546 F.3d 847, 854 (7th Cir. 2008)).  For the

28  reasons previously discussed, the Court finds that there is no evidence showing that Mrs.

1  Umstead generated any hazardous waste or that she was actively involved in its storage or

2  handling.  The Court therefore GRANTS Mrs. Umstead's motion for summary judgment as

3  to Plaintiff's RCRA claim.

4       **H.**     **OTHER CLAIMS**

5       Mrs. Umstead does not proffer any arguments specifically addressing Plaintiff's

6  third claim for equitable indemnity, fourth claim for declaratory relief, sixth and seventh

7  claims for nuisance, ninth and tenth claims for negligence and fourteenth claim for trespass.

8  Without the benefit of any briefing on the particular elements necessary to establish

9  liability with respect to each of these claims, the Court is unable to conduct an informed or

10 meaningful analysis of whether summary judgment is warranted.  Because Mrs. Umstead

11 has failed to carry her initial burden under Rule 56, the Court DENIES her motion for

12 summary judgment as to these claims.

13      **I.**     **SUMMARY OF RULING**

14      The Court DENIES Plaintiff's request to amend the FAC, and finds that the relevant

15 time period for evaluating Mrs. Umstead's liability in this action is from 1983 to 1986.   In

16 addition, the Court GRANTS partial summary judgment for Mrs. Umstead on Plaintiff's

17 first claim for cost recovery under CERCLA, second claim for indemnity under HSAA,

18 fifth claim under the Porter-Cologne Act, eleventh claim for express contractual indemnity,

19 fifteenth claim under RCRA, and sixteenth claim under CERCLA.  The motion is DENIED

20 as to all other claims.

21 **V.**     **HOYT'S MOTION TO DISMISS AS TO PLAINTIFF AND MRS. UMSTEAD**

22      Pursuant to Rule 12(b)(6), Hoyt moves to dismiss:  (1) Plaintiff's first claim under

23 CERCLA § 107 and second claim under HSAA, as alleged in its FAC; and (2) Mrs.

24 Umstead's first crossclaim under CERCLA § 107, second crossclaim under CERCLA

25 § 113, third crossclaim for negligence and sixth claim for nuisance, which are alleged in her

26 Second Amended Cross-Claim.  Dkt. 284.  The Court previously dismissed these claims

27 and crossclaims and granted Plaintiff and Mrs. Umstead leave to amend.  In its motion to

28 dismiss, Hoyt contends that neither Plaintiff nor Umstead has cured such deficiencies, and

therefore, these claims should be dismissed without leave to amend.  Dkt. 284.  Plaintiff

and Mrs. Umstead oppose Hoyt's motion, though Umstead has agreed to voluntarily

dismiss her crossclaim for nuisance.  As will be set forth below, the Court finds that

Plaintiff and Mrs. Umstead's CERCLA claim and crossclaims, Plaintiff's HSAA claim, and

Mrs. Umstead's negligence crossclaim each fails to state a claim.[13]

### A.    CERCLA AND HSAA

#### 1.    Overview

CERCLA § 107(a) provides, inter alia, that a PRP includes:

> **(3)** any person who by contract, agreement, or otherwise
> *arranged for disposal or treatment*, or arranged with a
> transporter for transport for disposal or treatment, of *hazardous*
> *substances owned or possessed by such person*, by any other
> party or entity, at any facility or incineration vessel owned or
> operated by another party or entity and containing such
> hazardous substances, and

42 U.S.C. § 9607(a)(3) (emphasis added).  Both Plaintiff and Mrs. Umstead seek to hold

Hoyt liable under CERCLA as an "arranger" under this provision.  See FAC ¶ 28, Dkt. 283;

Sec. Am. Cross-Cl. ¶ 15, Dkt. 282.  "[U]nder the plain language of the statute, an entity

may qualify as an arranger under § 9607(a)(3) when it takes *intentional steps* to dispose of

a hazardous substance."  Burlington N. & Santa Fe Ry. Co. v. United States, 129 S.Ct.

1870, 1879 (2009) (emphasis added).  The Ninth Circuit has recognized two theories of

arranger liability:  (1) "traditional" or "direct arranger" liability in which "the sole purpose

of the transaction is to arrange for the treatment or disposal of the hazardous wastes"; and

(2) "broader" arranger liability, in which "control is a crucial element of the [fact-specific]

---

[13] Subsequent to the close of briefing, the Court was notified of the settlement reached between Plaintiff and Hoyt.  Dkt. 412.  Thus, to the extent that Hoyt's motion addresses the sufficiency of Plaintiff's CERCLA and HSAA claims, said motion is moot. Nonetheless, the Court notes that Mrs. Umstead, Renz and Dennison's CERCLA and HSAA crossclaims against Hoyt incorporate the allegations made by Plaintiff against Hoyt. Therefore, the sufficiency of the allegations contained in the FAC remain in dispute. Because the Court's analysis of Hoyt's arguments with respect to the FAC will inform its decision as to Hoyt's other motions, the Court analyzes the instant motion in toto.

determination of whether a party is an arranger." United States v. Shell Oil Co., 294 F.3d 1045, 1054 (9th Cir. 2002) ("Shell Oil"). "A person may be held liable as an 'arranger' under § 9607(a)(3) only if the material in question constitutes 'waste' rather than a 'useful product.' … Application of this distinction has been referred to as the 'useful product doctrine.'" Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc., 508 F.3d 930, 934 (9th Cir. 2007) ("Alco") (citations omitted).

In its prior ruling, the Court dismissed Plaintiff and Mrs. Umstead's CERCLA claims on several grounds. First, the Court found that neither had alleged facts demonstrating that Hoyt engaged in intentional conduct to *dispose* of PCE. The Court explained:

> Plaintiff and [Mrs.] Umstead fail to allege any facts that could establish that Hoyt intentionally planned for disposal of PCE through the sale of its machines. Moreover, the pleadings are devoid of facts indicating how the Hoyt machines are alleged to have "disposed" of PCE, as that term is defined in Section 6903(3). Indeed, Hoyt is further removed from the contamination as it is not alleged to have sold or provided any PCE to the dry cleaner operators.

1/12/11 Order at 6, Dkt. 278. Second, the Court concluded that Plaintiff had failed to state a claim for arranger liability under a "direct" theory because Hoyt was not alleged to have been directly involved in the disposal of the waste; nor was it an arranger under a "broader" theory, since there was no allegation that Hoyt had the authority or obligation to control the waste. Id. Finally, the Court rejected Mrs. Umstead's contention that the CERCLA claim and counterclaims were based on the notion that Hoyt arranged for the *treatment*, as opposed to the *disposal*, of a hazardous substance. The Court explained that the operative pleadings had alleged only that "Hoyt is an arranger of the *disposal* of hazardous waste, and none of the allegations characterizes Hoyt as an arranger for '*treatment*' of such waste." Id. at 7 (emphasis added). Lastly, the Court found that the useful product doctrine protects Hoyt from arranger liability because Plaintiff and Mrs. Umstead had failed to "allege any facts showing that the sale of the dry cleaning equipment also included an arrangement for the ultimate disposal of a hazardous substance." Id. at 11.

In their respective amended pleadings, Plaintiff and Umstead have now attempted to allege that Hoyt is potentially liable as an arranger for the treatment and disposal of PCE. They have also attempted to allege facts showing that the defense of the useful product doctrine is inapplicable.  Both allege that the sole purpose of the Hoyt Sniff-O-Miser was to filter out PCE from air contaminated by the dry cleaning process, with the result being that, through the process of gravity, PCE was deposited into water.  FAC ¶ 16, Dkt. 283; Sec. Am. Cross-Cl. ¶¶ 10-11, Dkt. 282.  There is some variation in the parties' allegations, however.  Plaintiff claims that in January 1975, Renz and Dennison purchased a Hoyt Sniff-O-Miser from Steam Equipment, and that "a man named 'Pete'" instructed them to dispose of the PCE-laden wastewater into the toilet.  FAC ¶ 16, Dkt. 283.  Plaintiff also asserts that a 1979 instruction manual instructs users to dispose of wastewater directly into the sewer.  Id.  For her part, Mrs. Umstead makes no mention of Steam Equipment, "Pete" or an instruction manual, but instead avers that Hoyt "controlled the layout of the dry cleaning operations," and that Hoyt instructed that wastewater containing PCE should be placed in the sewer.  Sec. Am. Cross-Cl. ¶ 11, Dkt 282.  Both contend that the aforementioned allegations are sufficient to hold Hoyt liable as an arranger for the treatment or disposal of hazardous waste under CERCLA.  Pl.'s Opp'n at 5-6, Dkt. 330; Umstead Opp'n at 11, Dkt. 327.

In its motion, Hoyt argues that the amended CERCLA and HSAA claims should be dismissed on the grounds that:  (1) there are insufficient allegations to show that Hoyt engaged in *intentional* conduct to render it liable as an arranger; (2) there are insufficient allegations supporting a *direct arranger* theory; (3) there are no allegations supporting a *broader arranger* theory; and (4) Plaintiff and Mrs. Umstead's allegations are insufficient to foreclose application of the useful product defense.  Dkt. 284.  The Court analyzes these contentions seriatim.

### 2.      Analysis

#### a)      *Intentional Conduct*

Under <u>Burlington</u>, "an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance."  129 S.Ct. at 1879.[14]  Though Plaintiff does not address Hoyt's arguments directly, Mrs. Umstead asserts that the purpose of Hoyt's Sniff-O-Miser was to extract PCEs from the air, and that Hoyt's operating instructions directed users to dispose of wastewater containing PCE into the sewer. Umstead Opp'n at 12, Dkt. 327.  She also claims that Hoyt controlled the installation and layout of the Sniff-O-Miser.  <u>Id.</u>  According to Mrs. Umstead, these allegations are sufficient to state a claim that Hoyt engaged in intentional conduct to dispose of hazardous waste, whether under the traditional or "direct" theory or "broader" arranger theory.  <u>Id.</u>

The sole authority cited by Mrs. Umstead in support of her argument is <u>Vine Street, LLC v. Keeling ex rel. Estate of Keeling</u>, 460 F. Supp. 2d 728 (E.D. Tex. 2006).  In <u>Vine Street</u>, property owners brought a cost recovery action under CERCLA against various parties, including Norge, the manufacturer of the commercial laundry equipment which was used at a laundry and drying cleaning facility known as the Norge Laundry & Cleaning Village.  Plaintiff claimed that the defective design of water separators in the laundromat's coin-operated Norge dry-cleaning machines led to the discharge of contaminated wastewater into the property's sewage drainage pipes, which allowed the hazardous chemicals to corrode those pipes, escape into the surrounding soil, and contaminate the

---

[14] Plaintiff argues that <u>Burlington</u> applies only to disposal cases, and therefore, is inapposite to a treatment case such as the present.  Pl.'s Opp'n at 5, Dkt. 330.  Plaintiff cites no decisional authority and fails to provide any reasoned analysis to support this contention. Moreover, the distinction advocated by Plaintiff ignores the <u>Burlington</u> court's analysis.  In examining the "ordinary meaning" of the words contained in the statute, the Court noted that "the word 'arrange' implies action directed to a specific purpose[.]"  129 S.Ct. at 1879. Based on that interpretation, the Court extrapolated that the term "arranged" as used in the phrase "arranged for disposal or treatment," 42 U.S.C. § 9607(a)(3), requires a showing of "intentional steps" by the putative PRP.  <u>Id.</u>  In addition, the Court reasoned that mere knowledge of disposal or treatment is not sufficient to establish an intention.  <u>Id.</u>  Thus, while it is true that the <u>Burlington</u> court was discussing the meaning of "arranged" in the context of "disposal," the Court's reasoning and logic thus apply equally to the term "treatment."

plaintiff's property.  Id. at 734.  The district court ruled that the extent of defendant Norge's control over the dry cleaning business established a franchise or franchise-like relationship with the dry cleaner that was sufficient for purposes of arranger liability under CERCLA. Id. at 746.  In reaching this conclusion, the court focused on "Norge's level of input into and control of the facility's design and layout, its workers' installation and testing of the facility's equipment, its corporate representatives' degree of participation in the facility's opening, its training of the facility's attendants, its requirements for displays of signs, colors, and logos, and College Cleaners' own identification of the facility as a 'Norge Laundry & Cleaning Village[.]'"  Id. at 752.  The court also noted the nexus between Norge and the disposal of hazardous chemicals was underscored by the fact that Norge connected its machines "to drains leading directly to the building's sewer lines," thus leaving the operator with "no practical choice as to how to dispose of the wastewater."  Id. at 746.

Vine Street is distinguishable from the instant case.  There, it was the manufacturer's direct and comprehensive involvement in the operation of its dry cleaning machines specifically, and the dry cleaning business in general, which the court found dispositive of Norge's potential liability as an arranger for the *disposal* of hazardous waste.  Plaintiff's FAC and Mrs. Umstead's Second Amended Cross-Claim are devoid of such allegations. Rather, Plaintiff merely alleges that Renz and Dennison purchased a Hoyt Sniff-O-Miser from Steam Equipment and that someone named "Pete" instructed them to dispose of the PCE-laden wastewater into the toilet.  FAC ¶ 16, Dkt. 283.  Plaintiff also points to an instruction manual from 1979, which instructs users to pipe the wastewater into an open sewer system.  Id.  There are no allegations, however, that *Hoyt* was directly involved in the operation of the Sniff-O-Miser or mandated specifically how Renz, Dennison or any of the other dry cleaning operators were to dispose of PCE-contaminated water.  Although Mrs. Umstead alleges that Hoyt installed the Sniff-O-Miser and provided instructions on its use and "controlled the layout" of the dry cleaning operation, she fails to allege any facts to support these conclusory, fact-barren assertions.  See Twombly, 550 U.S. at 555 (holding

1   that "formulaic" recitation of the elements of a claim are insufficient to survive a Rule

2   12(b)(6) motion). [15]

3          In sum, Plaintiff and Mrs. Umstead's allegations fail to establish that Hoyt took

4   intentional steps to dispose of PCE which, in turn, contaminated the Property.  Their

5   allegations that Hoyt provided instructions on the use of the Sniff-O-Miser and Mrs.

6   Umstead's conclusory allegations regarding Hoyt's control of the layout of the dry cleaning

7   operation are too vague to comport with Federal Rule of Civil Procedure 8.  The failure to

8   sufficiently allege intentional conduct is, standing alone, fatal to Plaintiff and Mrs.

9   Umstead's claim that Hoyt may be held liable as an arranger under 42 U.S.C. § 9607(a)(3).

10  But even if intentional conduct were adequately alleged, Plaintiff and Mrs. Umstead's

11  allegations fail to state a claim under either the "direct arranger" or "broader arranger"

12  theories of liability for the reasons that follow.

13                    *b)*     ***Direct Arranger Liability***

14         To establish liability under the "traditional" or "direct arranger" theory, "the sole

15  purpose of the transaction is to arrange for the treatment or disposal of the hazardous

16  wastes[.]"  <u>Shell Oil</u>, 294 F.3d at 1054.  In their amended pleadings, Plaintiff and Mrs.

17  Umstead now claim that Hoyt is an arranger for the *treatment* of hazardous waste, as

18  opposed to *disposal.*  <u>See</u> FAC ¶ 16 (alleging that "[t]he purpose of the [Sniff-O-Miser]

19  was to *treat and reclaim* PCE from gaseous fumes vented by the dryer/reclaimer or

20  otherwise present in ambient air from other dry cleaning plant operations.") (emphasis

21  added), Dkt. 283; Sec. Am. Cross-Cl. ¶ 11 (alleging that the purpose of the Sniff-O-Miser

22  "was to *treat* PCE contaminated air that was produced in the dry cleaning process using

23  carbon cartridges that reclaimed the PCE.") (emphasis added), Dkt. 282.   However,

24  Plaintiff and Mrs. Umstead's allegations reveal that no "treatment" of a hazardous waste

25  occurred.  The allegations of the FAC and Second Amended Cross-Claim specifically

26

27         [15] Moreover, unlike <u>Vine Street</u>, there are no allegations that Hoyt's alleged

28  instructions to dispose of water containing PCE in the sewer pipes caused those pipes to
    corrode and leak PCE *onto the Property*.

1    allege that Sniff-O-Miser extracts PCE from the air so that it can be reused in the dry

2    cleaning process.  FAC ¶ 16, Dkt. 283; Sec. Am. Cross-Cl. ¶ 11, Dkt. 282.  There are no

3    allegations, however, that the allegedly hazardous substance—PCE—is itself treated in any

4    manner.  But even if the process by which the Sniff-O-Miser allegedly operates constitutes

5    treatment, it is readily apparent from the pleadings that such treatment (or for that matter,

6    disposal) was not its sole purpose.  The Court thus finds no basis upon which to impose

7    direct arranger liability on Hoyt.

8                    c)      *Broader Arranger Liability*

9            In order to establish liability under a broader arranger theory, the defendant must

10    "1) own or possess waste and arrange for its disposal; or 2) have the authority to control

11    and to exercise some actual control over the disposal of waste."  Coeur D'Alene Tribe v.

12    Asarco Inc., 280 F. Supp. 2d 1094, 1132 (D. Idaho 2003).  "No court has imposed arranger

13    liability on a party who never owned or possessed, and never had any authority to control

14    or duty to dispose of, the hazardous materials at issue."  Shell Oil, 294 F.3d at 1058.

15           Neither Plaintiff nor Mrs. Umstead alleges that Hoyt owned or possessed PCE or

16    PCE-contaminated water.  Nor do they allege that Hoyt had any authority or obligation to

17    control the disposition of PCE waste.  Though Mrs. Umstead attempts to highlight her

18    allegations that Hoyt manufactured and installed the Sniff-O-Miser, provided instructions

19    directing the disposal of PCE-contaminated water in the sewer and controlled the layout of

20    the dry cleaning facility, such allegations do not fall within the ambit of broader arranger

21    liability as expressed in Shell Oil because, ultimately, there are no facts showing that Hoyt

22    owned or possessed or had any duty or authority to control the disposal or treatment of PCE

23    used during the dry cleaning operations at Cal Cleaners.

24                    d)      *Useful Product Defense*

25           Finally, the Court concurs with Hoyt that, as before, Plaintiff's claim and Mrs.

26    Umstead's crossclaims are precluded by the useful product defense.  Under this defense,

27    "an entity [cannot] … be held liable as an arranger merely for selling a new and useful

28    product if the purchaser of that product later, and unbeknownst to the seller, disposed of the

product in a way that led to contamination.  <u>Burlington</u>, 129 S.Ct. at 1878; <u>e.g.</u>, <u>Cal. Dep't of Toxic Substances Control v. Payless Cleaners</u>, 368 F. Supp. 2d 1069, 1077 (E.D. Cal. 2005) ("a manufacturer of PCE [cannot] be held liable as a CERCLA arranger where it has done nothing more than sell a useful chemical.") (citing <u>City of Merced v. Fields</u>, 997 F. Supp. 1326 (E.D. Cal. 1998)).

        As discussed in detail above, Plaintiff and Mrs. Umstead's allegations are insufficient to establish that Hoyt *arranged for* the treatment or disposal of PCE.[16]  Plaintiff merely alleges that Renz and Dennison purchased the machine from Steam Equipment, and that "Pete" instructed them to dispose of the PCE-laden wastewater into the toilet.  There are no allegations that Steam Equipment or Pete were acting as agents on behalf of Hoyt or following Hoyt's instructions.  Likewise, Mrs. Umstead's generalized allegations that Hoyt's alleged instructions to dispose of PCE wastewater into the sewer are too vague and conclusory under <u>Twombly</u> and <u>Iqbal</u>.  Moreover, there is no allegation that the purported disposal of the wastewater *into the sewer* resulted in the contamination *of the Property*.

        The Court concludes that neither Plaintiff nor Mrs. Umstead has alleged viable claims under CERCLA or HSAA, and therefore, GRANTS Hoyt's motion to dismiss Plaintiff's first and second claims for relief and Umstead's first and second crossclaims as to Hoyt.

## B.   NEGLIGENCE

        Mrs. Umstead's third crossclaim is for negligence.  To state a cognizable claim for negligence under California law, Plaintiff "must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages."  <u>Ileto v. Glock, Inc.</u>, 349 F.3d 1191, 1203 (9th Cir. 2003).  To sustain a claim for negligence, the plaintiff must seek damages for a physical injury.  <u>Aas v. Super. Ct.</u>, 24 Cal.4th 627, 635-36 (2000).  "[E]conomic loss alone, without physical injury, does not amount to the type of damage that will cause a negligence

---

[16] Plaintiff does not respond to Hoyt's useful product arguments in any meaningful manner.

1    or strict liability cause of action to accrue."  <u>County of Santa Clara v. Atlantic Richfield</u>

2    <u>Co.</u>, 137 Cal.App.4th 292, 318 (2006).

3        In its January 12, 2011 Order, the Court granted Hoyt's motion to dismiss Mrs.

4    Umstead's negligence claim, finding that it was barred by the economic loss doctrine.  <u>See</u>

5    1/12/11 Order at 14, Dkt. 278.   The Court explained as follows:

6            In her opposition, [Mrs.] Umstead argues that because she and
             Plaintiff allege that Hoyt's negligence caused contamination to
7            the Property, she sufficiently alleges non-economic loss.  [Mrs.]
             Umstead's argument, however, is based on a
8            mischaracterization of her negligence claim.  While Plaintiff is
             seeking to recover damages to the Property with its negligence
9            claim, with her negligence claim, *[Mrs.] Umstead is only
             seeking costs and fees resulting from her defense against
10           Plaintiff' claims and damages arising from any finding of
             liability under those claims.* [Mrs.] Umstead provides no
11           authority to support the proposition that these types of damages
             are noneconomic losses.
12

13   <u>Id.</u> (emphasis added).  The Court further found that Mrs. Umstead had failed to allege any

14   facts demonstrating the existence of a special duty to prevent her from suffering economic

15   loss.  <u>Id.</u>  The Court granted Mrs. Umstead leave to amend her negligence claim.  <u>Id.</u> at 15.

16       Hoyt moves to dismiss Mrs. Umstead's negligence claim, as amended, on the same

17   grounds as before; namely, that such claim is barred by the economic loss doctrine and that

18   there is no basis for finding a special duty to prevent economic loss.  In response to Hoyt's

19   first point, Mrs. Umstead contends that she sufficiently alleged "physical damage to the

20   Property…."  Umstead Opp'n at 7, Dkt. 327.  As support, Mrs. Umstead points to the

21   allegations set forth in Paragraph 35 of the Second Amended Cross-Claim where she

22   alleges that as a result of "[c]ontamination and physical harm to the PROPERTY …. the

23   soil, air and groundwater beneath and around the PROPERTY has been damaged, injured

24   and rendered unusable."  Sec. Am. Cross-Cl. ¶ 35, Dkt. 282.  However, these new

25   allegations are insufficient to sustain her amended negligence claim.  Since Mrs. Umstead

26   admittedly does not own or have any interest in the Property, any injury caused by the

27   contamination of the Property is necessarily limited to her potential responsibility for

28

1    paying a share of the cost of remediating the Property.  In other words, Mrs. Umstead's

2    loss, *by definition*, is limited to economic loss.

3         Equally infirm is Mrs. Umstead's ancillary contention that Hoyt owed her a "special

4    duty" to prevent her from sustaining economic loss.  Generally, there is no duty to prevent

5    economic loss to third parties in negligence actions.  See Greystone Homes, Inc. v. Midtec,

6    Inc., 168 Cal.App.4th 1194, 1216 (2008) (citing Ratcliff Architects v. Vanir Constr. Mgmt.,

7    Inc., 88 Cal.App.4th 595, 605 (2001)).  Such a duty may arise, however, if a special

8    relationship exists between the parties that imposes a special duty to exercise ordinary care

9    to avoid causing economic injury to the other.  See Ott v. Alfa-Laval Agri, Inc., 31

10   Cal.App.4th 1439, 1448-49 (1995).  The existence of a special relationship depends on

11   "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the

12   foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered

13   injury, (4) the closeness of the connection between the defendant's conduct and the injury

14   suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of

15   preventing future harm."  J'Aire Corp. v. Gregory, 24 Cal.3d 799, 804 (1979).  "In order to

16   survive a motion to dismiss, a claim for negligence based on a special relationship … must

17   allege facts sufficient to support the existence of a special relationship."  Exxonmobil Oil

18   Corp. v. Nicoletti Oil, Inc., 713 F. Supp. 2d 1105, 1113 (E.D. Cal. 2010).

19        Mrs. Umstead argues that "Hoyt's duty arises from its active role in the treatment

20   and disposal of wastes at the Property," and from its "control over the installation and

21   design layout of the PCE treatment system at the Property as well as its being the

22   manufacturer and seller of the equipment."  Dkt. 327 at 9.  These allegations, however, do

23   not show a special relationship between Hoyt and Mrs. Umstead.  Indeed, under Mrs.

24   Umstead's reasoning, Hoyt would owe a special duty to any user of its equipment, which

25   would effectively render the J'Aire test meaningless.  Unsurprisingly, Mrs. Umstead fails to

26   cite any decisional authority to support her novel theory.  Thus, the Court GRANTS Hoyt's

27   motion to dismiss Mrs. Umstead's third crossclaim for negligence.

28

1

**C.   NUISANCE**

2    Hoyt moves to dismiss Mrs. Umstead's sixth crossclaim for nuisance.  In response,

3  Mrs. Umstead states that she is voluntarily dismissing this claim against Hoyt and has so

4  notified counsel for Hoyt.  Umstead Opp'n at 1 n.1, Dkt. 327.  The Court construes this as a

5  request for dismissal under Rule 15(a).  See Hells Canyon Preservation Council v. U.S.

6  Forest Serv., 403 F.3d 683, 687-688 (9th Cir. 2005) (holding that Rule 15(a) governs

7  voluntary dismissal of individual claims).  The Court therefore dismisses Mrs. Umstead's

8  crossclaim for nuisance as to Hoyt.

9

**D.   SUMMARY OF RULING**

10    Based on the foregoing, the Court finds that dismissal of Plaintiff's CERCLA and

11  HSAA claims and Mrs. Umstead's CERCLA and negligence crossclaims is warranted.  The

12  next question is whether further leave to amend should be granted.  The Court notes that

13  both Plaintiff and Mrs. Umstead have had ample notice and an opportunity to cure the

14  deficiencies which resulted in the prior dismissal of the aforementioned claims.  Given the

15  late stage of these proceedings, coupled with the futility of further amendment, the Court

16  exercises its discretion and dismisses these claims without leave to amend.  See Mir, 646

17  F.2d at 347.

18  **VI.   HOYT'S MOTION TO DISMISS AS TO RENZ**

19    On March 22, 2011, Renz filed a pleading styled as Defendant Kenneth Renz's

20  Amended Cross-Complaints in Response to Fourth Amended Complaint.  Dkt. 309.  In this

21  pleading, Renz alleges five crossclaims for:  (1) indemnity/cost recovery under CERCLA

22  § 107; (2) contribution under CERCLA § 113; (3) contribution under the HSAA;

23  (4) equitable contribution and indemnity; and (5) declaratory relief.  Dkt. 309.  Renz's

24  CERCLA and HSAA claims incorporate by reference, and are based upon, the allegations

25  contained in Plaintiff's FAC.  Id. ¶¶ 11, 18, 24, 30, 45.

26    Pursuant to Rule 12(b)(6), Hoyt now moves to dismiss Renz's first, second and third

27  crossclaims under CERCLA § 107, CERCLA § 113 and HSAA, respectively.  Dkt. 333.

28  Hoyt's motion is virtually identical to its companion motion to dismiss certain claims in

Plaintiff's FAC and Umstead's Second Amended Cross-Claim. Dkt. 284. In turn, Renz's opposition parallels the respective opposition briefs filed by Plaintiff and Mrs. Umstead response to Hoyt's motion. Dkt. 309, 330. Thus, for the same reasons as set forth above, the Court GRANTS Hoyt's motion to dismiss Renz's first, second and third crossclaims, which are dismissed without leave to amend.

## VII. HOYT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF

The third and final motion filed by Hoyt is its motion for partial summary judgment, which is directed to Plaintiff's fourteenth claim for relief for trespass. Dkt. 306. As noted above, Hoyt and Plaintiff have settled their dispute. As a result, Hoyt's motion is DENIED as moot.

## VIII. BOWE AND VIC'S MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR SUMMARY JUDGMENT AS TO MRS. UMSTEAD

On November 29, 2009, Umstead filed a Third Party Complaint against various third party defendants, including Bowe and Vic. Dkt. 205. Bowe and Vic have filed two motions: (1) a motion for judgment on the pleadings under Rule 12(c), Dkt. 311; and (2) a motion for summary judgment, or alternatively, for partial summary judgment, Dkt. 312. Because the arguments presented in Bowe and Vic's summary judgment motion are dispositive, the Court does not address their motion for judgment on the pleadings.

### A. CERCLA AND HSAA

Mrs. Umstead's first claim for indemnity/cost recovery under CERCLA § 107, second claim for contribution under CERCLA § 113 and third claim for indemnity/contribution under HSAA are based on the same flawed arranger theory of liability that she has asserted in her crossclaims against Hoyt. In addition, Mrs. Umstead's CERCLA and HSAA third party claims are contingent upon a determination that she is liable to Plaintiff based on the CERCLA and HSAA claims alleged in the FAC. E.g., Third Party Compl. ¶¶ 29-30, 36-37, 41-42, Dkt. 205. Since the Court has granted Mrs. Umstead's motion for summary judgment with respect to Plaintiff's CERCLA and HSAA

1  claims, she no longer has any legal basis to pursue these particular claims against Bowe and

2  Vic.  Accordingly, the Court GRANTS Bowe and Vic's motion for summary judgment

3  with respect to the first, second and third claims alleged in Mrs. Umstead's Third Party

4  Complaint.

5       **B.**   **EQUITABLE INDEMNITY AND CONTRIBUTION**

6       Mrs. Umstead's fourth claim against Bowe and Vic is for equitable contribution and

7  indemnity.  "Equitable indemnity principles govern the allocation of loss or damages

8  among multiple tortfeasors whose liability for the underlying injury is joint and several."

9  Expressions at Rancho Niguel Assn. v. Ahmanson Devs., Inc., 86 Cal.App.4th 1135, 1139-

10  1140 (2001).  Under California law, equitable indemnity is not available absent the

11  existence of a joint legal obligation to the injured party.  Jocer Enters., Inc., v. Price, 183

12  Cal.App.4th 559, 573-74 (2010).  Stated another way, there can be no indemnity where the

13  party from whom indemnity is sought owes no duty to the plaintiff or is not responsible for

14  the injury.  Id.  Accordingly, in order for Mrs. Umstead to maintain her third party claim for

15  equitable indemnity against Bowe and Vic, they necessarily must owe a duty *to Plaintiff*.

16  Id.

17       In her opposition, Mrs. Umstead maintains that "[b]ecause Mrs. Umstead and

18  Vic/Bowe are alleged, along with the other Defendants, to have damaged and injured the

19  Property jointly, Mrs. Umstead properly alleges her claims for equitable contribution and

20  indemnity against Bowe and Vic.  Umstead Opp'n at 14, Dkt. 329.  Mrs. Umstead's

21  argument is devoid of any citations to any legal authority or any evidentiary support.  In

22  addition, she misses the point entirely.  The relevant question is whether there is a factual

23  and legal basis for finding that Bowe and Vic owed a legal duty *to Plaintiff*—not whether

24  Vic and Bowe owed a duty to her.  Given Mrs. Umstead's failure to make such a showing,

25  the Court GRANTS Bowe and Vic's motion for summary judgment as to Mrs. Umstead's

26  claim for equitable indemnity and contribution.

27

28

1

**C.      STRICT LIABILITY AND NEGLIGENCE**

2        Bowe and Vic move for summary judgment on Mrs. Umstead's fifth claim for strict

3   products liability and sixth claim for negligence based on the economic loss doctrine.

4   Bowe/Vic Mot. at 17, Dkt. 312.  As discussed above, such claims are not viable unless Mrs.

5   Umstead can establish that Bowe and Vic owed her a special duty to prevent her from

6   suffering economic loss.  The Court's analysis of Mrs. Umstead's negligence crossclaim as

7   to Hoyt applies with equal force to the claims alleged against Bowe and Vic.  Accordingly,

8   the Court GRANTS Bowe and Vic's motion for summary judgment with respect to

9   Plaintiff's claims for strict products liability and negligence.

10       **D.      PUBLIC NUISANCE AND NUISANCE PER SE**

11       Umstead states in her opposition that she is dismissing her seventh claim for public

12  nuisance and eighth claim for nuisance per se as to Bowe and Vic.  Umstead Opp'n at 2

13  n.2, Dkt. 332.  The Court construes this as a request for dismissal under Rule 15(a), <u>see</u>

14  <u>Hells Canyon Preservation Council</u>, 403 F.3d at 687-688, and therefore, dismisses

15  Plaintiff's claims for public nuisance and nuisance per se, with prejudice.

16       **E.      TRESPASS**

17       In her ninth claim, Mrs. Umstead alleges that Bowe and Vic trespassed on the

18  Property by installing equipment which caused PCE contamination.  Third Party Compl.

19  ¶ 75, Dkt. 205.  "A trespass is an invasion of the interest in the exclusive possession of

20  land, as by entry upon it[.]"  <u>Wilson v. Interlake Steel Co.</u>, 32 Cal.3d 229, 233 (1982).  A

21  trespass may be accomplished by personal entry upon the property of another, or "may be

22  accomplished by the casting of substances or objects upon the plaintiff's property from

23  without its boundaries."   <u>Elton v. Anheuser-Busch Beverage Group, Inc.</u>, 50 Cal.App.4th

24  1301, 1306 (1989) (internal quotations and citations omitted).

25       Bowe and Vic first argue that because Mrs. Umstead is not the owner of the Property

26  and that her tenancy ended in 1986, she lacks standing to pursue damages for trespass.

27  Bowe/Vic Mot. at 19-20, Dkt. 312.  Though Mrs. Umstead does not respond to this

28  contention, the Court questions its validity.  "The cause of action for trespass is designed to

protect possessory—not necessarily ownership—interests in land from unlawful

interference." <u>Smith v. Cap Concrete, Inc.</u>, 133 Cal.App.3d 769, 774 (1982). And while

Mrs. Umstead is not entitled to current possession of the Property, Bowe and Vic do not

dispute that she had such possession *when the trespass is alleged to have occurred.* <u>See</u>

<u>Heilbron v. Heinlen</u>, 72 Cal. 371, 374 (1887) (noting that the injury to a possessory interest

depends upon whether "the property was in [plaintiff's] possession at the time of the

injury"). As such, the Court cannot conclude, as a matter of law, that Mrs. Umstead is

precluded from asserting a trespass claim based on the fact that she is not the owner and

currently not in possession of the Property.

More compelling is Bowe and Vic's alternative argument that Mrs. Umstead's

trespass claim is barred by having consented to the installation of the equipment on the

Property. <u>See</u> <u>County of Santa Clara v. Atl. Richfield Co.</u>, 137 Cal.App.4th 292, 332-33

(2006) (holding that plaintiff could not state trespass claim based on lead contamination

where the lead "was placed on plaintiffs' property by plaintiffs or with their consent,"

notwithstanding their lack of awareness of "lead's dangerous propensities."). Mrs.

Umstead does not dispute that she consented to the installation of the Vic dry cleaning

equipment, but instead argues that Vic remains liable for trespass since it allegedly knew

that the operation of its equipment would result in hazardous substance contamination.

Umstead Opp'n at 16-17, Dkt. 329. Neither the evidence nor the case law cited by Mrs.

Umstead supports her contention. Thus, the Court finds that Mrs. Umstead has failed to

raise a genuine dispute of material fact and thus GRANTS Bowe and Vic's motion for

summary judgment as to Plaintiff's claim for trespass.

## F.   DECLARATORY RELIEF

Mrs. Umstead's tenth and final claim against Bowe and Vic is for declaratory relief.

Third Party Compl. ¶ 79, Dkt. 205. Bowe and Vic contend that a resolution of all of the

claims alleged in the Third Party Complaint as to them necessarily supports their request

for summary judgment on her declaratory relief claim. <u>See</u> <u>Shroyer v. New Cingular</u>

<u>Wireless Servs., Inc.</u>, 622 F.3d 1035, 1044 (9th Cir. 2010) (affirming summary judgment

on declaratory relief claim insofar as it is based on the district court's rulings on the
substantive claims affirmed on appeal).  Mrs. Umstead has presented no opposition to
Bowe and Vic's motion with respect to her declaratory relief claim. Accordingly, the Court
GRANTS Bowe and Vic's motion for summary judgment as to Mrs. Umstead's claim for
declaratory relief.

        G.     SUMMARY OF RULING

The Court GRANTS Bowe and Vic's motion for summary judgment as to all claims
alleged in Mrs. Umstead's Third Party Complaint, except as to her claims for nuisance,
which the Court deems dismissed.

## IX.   CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED THAT:

1.    Renz and Dennison's motions for summary judgment are GRANTED with
respect to Plaintiff's twelfth claim for express contractual indemnity, and are DENIED as to
all other claims alleged in the FAC.

2.    Mrs. Umstead's motion for summary judgment is GRANTED with respect to
Plaintiff's first claim for cost recovery under CERCLA, second claim for indemnity under
HSAA, fifth claim under the Porter-Cologne Act, eleventh claim for express contractual
indemnity, fifteenth claim under RCRA, and sixteenth claim under CERCLA.  The motion
is DENIED as to all other claims alleged in the FAC.  The Court DENIES Plaintiff's
request to amend the FAC, and finds that the relevant time period for evaluating Mrs.
Umstead's liability in this action is from 1983 to 1986.

3.    Hoyt's motion to dismiss Plaintiff's first claim under CERCLA and second
claim under HSAA as alleged in the FAC, and Mrs. Umstead's first and second crossclaims
under CERCLA and third claim for negligence as alleged in her Second Amended Cross-
Claim is GRANTED, and said claims are DISMISSED with prejudice.  Mrs. Umstead's
sixth crossclaim for nuisance is deemed to have been voluntarily dismissed.

4.      Hoyt's motion to dismiss Renz's first and second crossclaims under CERCLA and third claim under HSAA as alleged in his Amended Cross-Complaints in Response to the Fourth Amended Complaint is GRANTED, and said claims are DISMISSED with prejudice.

5.      Hoyt Corporation's motion for partial summary judgment with respect to Plaintiff's fourteenth claim for continuing trespass as alleged in the FAC is DENIED as moot in light of the settlement between Hoyt and Plaintiff.

6.      Bowe and Vic's motion for summary judgment with respect to the claims alleged in Mrs. Umstead's Second Amended Third Party Complaint is GRANTED, except as to her seventh claim for public nuisance and eighth claim for nuisance per se which are deemed to have been voluntarily dismissed.

7.      Bowe and Vic's motion for judgment on the pleadings is DENIED as moot.

8.      Pursuant to Federal Rule of Civil Procedure 4(m), Defendant Estate of Wiley Umstead is DISMISSED, without prejudice.

9.      This Order terminates Dkt. 284, 306, 308, 311, 312, 313, 314 and 333.

IT IS SO ORDERED.

Dated:  June 9, 2011

_Saundra B Armstrong_
SAUNDRA BROWN ARMSTRONG
United States District Judge